UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

In the Matter of the Complaint of;
TAYLOR THREEFEATHERS BLACKHAWK,

    Plaintiff,

-vs-

SERGEANT K. HUGHES, of the New York State Department of Corrections and Community Supervision, (hereafter "DOCCS"), in His Individual Capacity,

    Defendant,

---

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C. §1983

9:20-CV-241 (LEK/TWD)

JURY DEMAND



TAYLOR BLACKHAWK hereby declares under penalty of perjury pursuant to 28 U.S.C. §1746 that the facts set forth below are true;

## I. PRELIMINARY STATEMENT

1. This is a Civil Rights Action brought pursuant to 42 U.S.C. §1983 seeking Declaratory and Compensatory Relief against Defendant solely in His Individual Capacity for Defendant having violated Plaintiff's clearly established rights under the First Amendment's Free Exercise Clause of the United States Constitution to practice Plaintiff's Central and Mandatory act of praying twice daily in the form of Native American Smudging. As set forth in the paragraphs which follow, Defendant acted in excess of the scope and course of his employment in violating Plaintiff's Civil Rights and Declaratory and Compensatory Relief is appropriate.

## II. JURISDICTION AND VENUE

2.  Plaintiff repeats and realleges the facts contained in ¶-1 supra as though fully set forth below;

3.  This Court has jurisdiction of this Action pursuant to 28 U.S.C. §§1331, 1343(3), 42 U.S.C. §1983, and any other applicable statute.

4.  Venue is appropriate before this Court pursuant to 28 U.S.C. §1391(1) and (2), and any other applicable statute as the events giving rise to this Complaint occurred within Washington County, State of New York, and Plaintiff and Defendant maintain residences within the Northern District of New York.

## III. "STRIKES"

5.  Plaintiff repeats and realleges the facts contained in ¶¶ 1 through 4 supra as though fully set forth below;

6.  Plaintiff has not incurred three strikes under the Prison Litigation Reform Act, (hereafter "P.L.R.A.").

## IV. EXHAUSTION

7.  Plaintiff repeats and realleges the facts contained in ¶¶ 1 through 6 supra as though fully set forth below;

8.  Plaintiff has satisfied the exhaustion requirement of the P.L.R.A. by filing and fully appealing administrative grievance WSH-7805-19 to DOCCS' highest appeal level, (C.O.R.C.).

9. Notably, though prohibited by DOCCS' Grievance Hearing Procedures, and objected to by Plaintiff, Defendant improperly participated in the Decision of administrative grievance WSH-7805-19, and improperly influenced the Committee's Decision therein.

## V. EXHIBITS

10. Plaintiff repeats and realleges the facts contained in ¶¶ 1 through 9 supra as though fully set forth below;

11. Attached hereto are the following true and accurate copies of documents maintained in the ordinary course of business by the DOCCS, New York State Division of Criminal Justice, (hereafter "DCJS"), and the Washington Correctional Facility, in support of this Claim for Relief;

| # | Description of Document |
|---|---|
| A. | DOCCS "FPMS" Personal Characteristics Screen Printout; and, |
| B. | W.C.F. Contact Slip dated 9/20/19; and, |
| C. | W.C.F. Contact Slip dated 9/25/19; and, |
| D. | Memorandum authored by Defendant on 10/2/19; and, |
| E. | W.C.F. Facility Policy #615 dated 4/02/19; and, |
| F. | DOCCS "FPMS" Inmate Overview Screen Printout; and, |
| G. | DCJS Printout (excerpt) for F.B.I. #13101HA6. |

## VI. PARTIES

12. Plaintiff repeats and realleges the facts contained in ¶¶ 1 through 11 supra as though fully set forth below.

(a) <u>Plaintiff</u>;

13. Plaintiff is TAYLOR THREEFEATHERS BLACKHAWK, (hereafter "Plaintiff"), with a Verified Postal Address of the Gowanda

-3-

Correctional Facility, P.O. Box 311, South Road, Gowanda, New York, 14070, as of the date of this Complaint; and,

   (i) Plaintiff maintains a residential address of 608 Third Street, Albany, New York, 12206 in Albany County, State of New York.

   14. At all times relevant to this Complaint, Plaintiff was designated as an adherent of the Native American Religion within DOCCS' FPMS system, (**Ex. A**); and,

   (i) At all times relevant to this Complaint, the DCJS and the Federal Bureau of Investigation designated Plaintiff's race as that of Native American, (i.e. "Indian", **Ex. G**); and,

   (ii) According to DOCCS' FPMS System, Plaintiff's race is Native American, (**Ex, F**).

   (b) As a; Native American, (¶-14 supra), Plaintiff's religious exercise of smudging is Central and Mandatory in Plaintiff's system of religious belief; and,

   (i) Is a religious exercise protected under the Free Exercise Clause of the First Amendment of the United States Constitution; and,

   (ii) Is a religious exercise, clearly established pursuant to DOCCS' Directive 4202 and a pre-existing Stipulation and Order entered into between Plaintiff and DOCCS more than six years prior to the date of this Complaint for Relief.

-4-

(b) Defendant;

16. Defendant is SERGEANT K. HUGHES, and employee of the DOCCS, with a Verified Postal Address of his employer at the Washington Correctional Facility, 72 Lock 11 Lane, Comstock, New York, 12821, and at all times relevant to this Complaint was employed by DOCCS as a Corrections Sergeant.

17. At all times relevant to this Complaint Defendant was personally responsible for the acts and omissions which violated Plaintiffs established civil rights as pleaded herein.

18. At all times relevant to this Complaint Defendant was personally aware that his acts and omissions violated Plaintiffs Civil Rights as pleaded herein; and,

(i) Defendant was at all times relevant to this Complaint personally aware[1] that Plaintiff's First Amendment Free Exercise Rights as set forth in this Complaint for Relief were clearly established by;

    (a) The First Amendment of the United States Constitution; and,
    (b) DOCCS' Directive 4202; and,
    (c) A Stipulation and Order; and,
    (d) WCF Facility Policy #615, (**Ex. E**).

19. Defendant was at all times relevant to this Complaint personally aware that Plaintiff was an adherent of the Native American Religion, (**Ex. A**).

---

FN1. — And more importantly, by his own verbal admissions, (e.g. ¶-33; ¶¶-46 through 49; and ¶-59 as set forth in this Complaint for Relief.

-5-

20. Defendant is sued in His Individual Capacity as his acts and omissions which violated Plaintiff's Civil Rights as set forth in this Complaint exceeded the scope and course of his employment as DOCCS does not permit employees to violate the Civil Rights of Inmates in DOCCS' custody.

## VII. SUPPORTING FACTS

(As to Protected Free Exercise of Religion)

21. Plaintiff repeats and realleges the facts set forth in ¶¶ 1 through 20 supra as though fully set forth below;

(a) **Clearly Established Rights**;

22. Central and Mandatory under direct consequence of significant spiritual harm of an irreparable nature is Plaintiff's act of praying a minimum of twice daily at specific time periods in the form of Native American smudging, this act occurs;

(i) Once in the early morning prior to consuming food, and before the sun is fully "up"; and,
(ii) Once in the evening after consuming the final meal of the day and before the sun is set to low.

23. Plaintiff has engaged in this practice for a very long time, including, but not limited to, his term of incarceration within DOCCS, and in 2013 after four years of passionate litigation a Stipulation and Order was entered into between Plaintiff and DOCCS' Officials which served to clearly establish Plaintiff's First Amendment Right to smudge at any DOCCS' facility, regardless of whether Plaintiff was registered as an adherent of the Native American faith.

-6-

24. Specifically, in Order to ensure compliance and that Plaintiff would not suffer violations of his right to pray in this method, a specific provision thereof stated;

"II. RELIGIOUS PRACTICES. B. Plaintiff is permitted to engage in the the practice of smudging, as defined and provided for in the settlement agreement to Hughes v. Goord, IV(G)(6)(a)-(c)."

25. In Order to ensure the rights enumerated above were respected not only at every single facility,[2] but even during transits between facilities and layovers, another provision thereof stated;

"III. PLAINTIFF'S RIGHTS DURING TRANSFER. A copy of this stipulation shall be permanently placed in plaintiff's guidance and legal file so that it may be referred to while in a facility and during transport."

26. Yet another provision, (§I-C), provided that ... "a copy of this order shall be placed in Plaintiff's package room folder." ... to ensure Plaintiff received the items needed for his religious practice, including the herbs and impliments required for smudging.

27. Moreover, as Plaintiff was at all times relevant to this Complaint registered as an adherent of the Native American religion, (**Ex. A**), Plaintiff's right to smudge was clearly established pursuant to DOCCS' Directive 4202 §L(6)(a)-(d)[3], Stipulation and Order notwithstanding.

28. Among the matters discussed during an intake interview with a Sergeant in Defendant's position of employment, is that of the interviewed inmates designated religion, (see ¶¶ 30-31 within).

---

FN2. - This is not a proceeding for enforcement. Plaintiff has been transferred and as of the date of this Complaint is smudging. This is a proceeding seeking redress for violations of clearly established rights causing irreparable injury by Defendant inflicted upon Plaintiff.

FN3. - In a former version, §XII(D)(8)(a)-(d) in its 2015 Revised Version.

29. Thus there can be no question of fact in existence to dispute that Plaintiff's right to pray in the form of Native American smudging twice per day at correct times was clearly established prior to, and during, Plaintiff's detention at the W.C.F. from September 20, 2019 through October 11, 2019.

(As to Defendant Hughes in His Individual Capacity)

(b) <u>Defendant's Awareness</u>;

30. Plaintiff arrived at W.C.F. on September 20, 2019 at approximately 12:30pm, Plaintiff's personal property was immediately processed and pursuant to the terms of the Stipulation and Directive 4202, Plaintiff was allowed to retain possession of his sacred herbs, which are required in order to smudge and are considered contraband in the possession of non-Native inmates.

31. Plaintiff was interviewed by Defendant, (see ¶-28 **supra**), during which Plaintiff inquired as to the policy at W.C.F. with respect to smudging, and advised Defendant as to the existence of Plaintiff's Court Order and its smudging provisions.

32. Defendant inquired if Plaintiff's designated religion of Native American was correct, and Plaintiff conceded that he was in fact Native American, and pointed out that Directive 4202, for many years, provides for smudging for registered Native American inmates.

33. Defendant Hughes specifically advised Plaintiff that Defendant was fully aware of Directive 4202's "long standing policy" of accomodating Native American smudging.

(c) **Defendant's Violative Conduct**;

34. Defendant advised Plaintiff that Defendant was aware of the requirements that Native American inmates be accommodated with respect to smudging, but claimed no policy existed as there allegedly had not been a "practicing native" at WCF in "five years," and advised Plaintiff to "write a tab" to the Coordinating Chaplain.

35. Plaintiff, who was practicing at WCF approximately three years prior, inquired as to whether Imam Yaki was still the Coordinating Chaplain at WCF, and Defendant confirmed that indeed Yaki[3] was.

36. Plaintiff pointed out to Defendant that as it was still early in the afternoon on a Friday, Yaki would still be present in the facility and asked Defendant to call Yaki so Plaintiff could be accommodated with his smudging.

37. Defendant admitted Yaki was still present in the facility, but refused to call Yaki despite Plaintiff having pointed out Yaki would be familiar with Plaintiff, Plaintiff's Court Order, and Plaintiff's smudging, as well as any relevant facility policy.

38. Defendant advised Plaintiff again, (¶ 34 supra), that there was no policy regarding smudging, in response to the events pleaded in ¶¶ 30-37 supra, Plaintiff;
    (i)   immediately wrote Yaki, (Ex. B); and
    (ii)  filed an administrative grievance.

---

FN3. - Despite Defendant's claims, Plaintiff was released approximately three years earlier from WCF, where he had smudged every day since being housed thereat.

-9-

39. On September 23, 2019, Plaintiff was called to Yaki's office in response to the request and grievance above, (§-38).

40. Plaintiff was told by Yaki that Stipulation notwithstanding, as a registered Native American, **(Exs. A,F and G)**, Plaintiff was entitled to smudge per DOCCS' Directive 4202 and that Yaki was advised by Defendant that once Defendant created a local policy, Plaintiff would be entitled to smudge, and that was to allegedly occur by the end of the day, (9/23/19).

41. By the end of September 25, 2019, having not heard back from Yaki, Plaintiff sent another request slip to Yaki, **(Ex. C)**, inquiring as to the status of Plaintiff's ability to smudge.

42. On September 26, 2019, Plaintiff was called to Yaki's office in response to the request above, (¶-41), and was told that per Defendant, no policy had yet been approved, but that Defendant was proposing a policy requiring that smudging;

   (i) occur outdoors, in violation of Hughes v. Goord, DOCCS' own Directive 4202, and Plaintiff's stipulation; and,

   (ii) in direct violation of Plaintiff's central religious beliefs, evening smudging would occur at a time inconsistent with the times required of Plaintiff's religion, Hughes v. Goord, Directive 4202, and Plaintiff's Stipulation.

43. Plaintiff registered objections consistent with the above, (¶-42), but did advise Yaki he would use the draft shelter proposed by Defendant so he could smudge/pray.

44. Plaintiff however advised Yaki that smudging at the wrong time of day was unacceptable and violate of Plaintiff's faith and the policies pleaded herein.

45. Yaki told Plaintiff that according to Defendant, Plaintiff had to wait until Defendant issued a relevant memorandum so that Plaintiff could smudge.

46.) Three days later no memorandum had yet been forthcoming and Plaintiff had still not been permitted to pray.

(d) Defendant's Admissions;

46. On September 29, 2019, Defendant stopped Plaintiff coming out of the messhall and advised Plaintiff he wanted to discuss Plaintiff's grievance and complaints regarding smudging.

47. Defendant now claimed, despite prior representations, (¶-32 supra), that there was a "long standing" policy at WCF regarding smudging that;

   (i) required use of the draft shelter; and,

   (ii) required evening smudging to occur at an incorrect afternoon time.

48. More significantly Defendant now claimed knowledge of this policy as he claimed to have written it to begin with, despite his prior claims of no policy existing, (¶¶ 34 through 38 supra).

49. Defendant also conceded his awareness that the evening smudging time, occurring in the afternoon, violated Plaintiff's and the Native American faith, and Hughes v. Goord, Directive 4202, and Plaintiff's Stipulation, but advised Plaintiff that until Plaintiff stopped filing grievances and complaints, Defendant would not consider correcting the time.

50. Plaintiff inquired as to why he was made to await a memo if such a policy existed, and Defendant responded by stating the memo was in his pocket at that time, and that Plaintiff could come to "lower control" to pick it up at the 3:30 p.m. smudging time.[4]

51. Not surprisingly, when Plaintiff attempted to obtain the memo in question as directed in ¶-50 supra, no such memorandum had been left in lower control and Plaintiff was told absent such no smudging would occur by the lower control officer.

52. On September 30, 2019,[5] Plaintiff was called to speak to Mr. Waters, the grievance supervisor at the WCF regarding Plaintiff's grievance, and was told by Waters to "drop" the grievance, which Plaintiff refused to do, as there was a policy in existence regarding smudging.

53. Waters refused to show or provide Plaintiff with the policy in question, and ultimately logged the grievance as Plaintiff advised Waters that per Defendant and Yaki, Plaintiff could not, and had not been allowed to, smudge as Defendant refused Plaintiff's requests until Defendant created a memorandum specific to Plaintiff.

54. While returning from Grievance to the housing unit Plaintiff was able to approach a relief sergeant, as Defendant was not at work that date, and asked the sergeant if Defendant had left a memorandum in the sergeant's office regarding Plaintiff's ability to smudge, advising the sergeant, (Paulson?), that Defendant claimed to have the memorandum on September 29, 2019. (¶-50 TB supra).

---

FN4. - Defendant actually tapped his pocket while making this statement as though he actually had the memorandum in his pocket.

FN5. - Now 10 days with no prayer.

55. The Sergeant checked Defendant's desk top and found FOM No. 615, **(Ex. E)**, lying thereupon, however this policy - which existed since **April 2, 2019** - was not provided previously to Plaintiff.

56. Despite the clear existence of this Policy, however, Defendant had refused to permit Plaintiff to smudge until Defendant decided to issue a memorandum specific to Plaintiff.

57. On October 2, 2019 Plaintiff attempted unsuccessfully to utilize FOM No. 615, **(Ex. E)**, to smudge at 7:00 a.m., while exiting the messhall later in the day Plaintiff approached Defendant and advised Defendant of Plaintiff's knowledge and possession of FOM No. 615, and what had occurred between September 29, 2019 and October 2, 2019, (¶¶-49 through 56 supra), with respect to Plaintiff's efforts to smudge.

58. Defendant admitted that the events pled above, (¶¶-34 through 56), were indeed Defendant's fault as Defendant had not, contrary to his prior claims, (¶¶-49 through 50), actually yet written a memorandum but claimed would do so "by the end of the day."

59. Plaintiff reminded Defendant that the evening smudging times of FOM No. 615, **(Ex. E)**, were improper, and Defendant stated "we'll see."[6]

60. Later in the evening Plaintiff received a copy of the memorandum in question which allowed him to begin smudging the following day, **(Ex. D)**, not surprisingly the memorandum was dated October 2, 2019, confirming Defendant's admission of not having actually created a memorandum, (¶-58 supra).

---

FN6. - Defendant was aware that Plaintiff was being transferred soon, and saw no need to bother with correcting the times.

61. This memorandum was a direct retaliatory act, which in relevant part to this Complaint did not accommodate Plaintiff's religion properly, reclassified Plaintiff's individual smudging as a "service," and imposed additional restrictions upon Plaintiff not specified in FOM No. 615, (Ex. E), nor applied to other Native Inmates at W.C.F. or by Directive 4202.

## VIII. PENOLOGICAL OBJECTIVES
(As to Defendant Hughes in his Individual Capacity)

62. Plaintiff repeats and realleges the facts set forth in ¶¶ 1 through 61 supra as though fully set forth below;

63. Defendant's acts and omissions pleaded above which include, inter alia, denying Plaintiff the ability to pray by concealing policy, violating a Court Order, violating the Directives of his employer, and lying, are not reasonably related to any penological objectives and in fact run directly afoul of his employers own policies regarding Native American smudging and compliance with Departmental Directives, Facility Policies, and Court Orders.

## IX. CAUSE OF ACTION
FIRST
Free Exercise of Religion
(U.S. Const. Amend. 1; 42 U.S.C. §1983)
(As to Defendant Hughes in his Individual Capacity)

64. Plaintiff repeats and realleges the facts set forth in ¶¶ 1 through 63 supra as though fully set forth below;

65. The First Amendment of the U.S. Constitution provides Plaintiff the Clearly Established Right to the Free Exercise of his

Central religious belief in praying twice daily, at the times required of his faith, and in a manner as is required of "God" as Plaintiff understands "God" to "be," (e.g. ¶¶ 15, 18, and 22); and,

66. Plaintiff's right to smudge twice daily at times required of his faith, and in a manner required of his faith while detained at the W.C.F. were clearly established at the time of the events set forth in this Complaint by; (e.g. ¶¶ 22-29); and,

    (a) Stipulation and Order of a Court; and,

    (b) Departmental Directive 4202; and,

    (c) Facility Policy #615; and,

    (d) A prior Native American settlement agreement.

67. Defendant knew, or should have known, that Plaintiff's right to pray twice daily in the form of Native American smudging at correct times was clearly established at the time of the events set forth in this Complaint,[7] (e.g. ¶¶ 18; 30-33); and,

68. At all times relevant to this Complaint Defendant misused the shield and authority of his office as Corrections Sergeant to intentionally violate Plaintiff's Civil Rights, (e.g. ¶¶ 30-63); and,

69. Defendant's acts and omissions as set forth in this Complaint are a direct and proximate cause of Plaintiff's having suffered a significant, sustained and irreparable First Amendment Free Exercise injury, (e.g. ¶¶ 30-63); and,

70. At all times set forth in this Complaint, Defendant's acts and omissions exceeded the scope of his employment, (e.g. ¶¶ 30-63); and,

71. Defendant's acts and omissions serve no legitimate penological objectives, (e.g. ¶ 63); and,

---

FN7. - As admitted by Defendant, (¶-33 e.g.).

72. Declaratory and Compensatory Relief is appropriate and just under the specific facts set forth in this Complaint. (e.g. ¶¶ 1-71); and,

73. An award of punitive damages is warranted to prevent Defendant and other W.C.F. staff from engaging in similar future conduct, (e.g. ¶¶ 1-72).

## X. RELIEF SOUGHT
(As to Defendant in His Individual Capacity)

744. Plaintiff repeats and realleges the facts set forth in ¶¶ 1 through 73 supra as though fully set forth below;

WHEREFORE Plaintiff respectfully seeks entry of judgement after trial by jury in the form of an Order granting;

I. Declaratory Relief holding that;

(i) At all times relevant to this Complaint Plaintiff's Right to Pray in the form of Native American smudging twice per day, at correct times, (¶ 22[i] and [ii]), was protected under the Free Exercise Clause of the First Amendment and was Clearly Established, (¶ 15[i] and [ii]; ¶¶ 22-29; ¶ 66(a)-(c)); and,

(ii) Defendant exceeded the scope and course of his employment and violated Plaintiff's Clearly Established First Amendment Right to pray twice per day as alleged in this Complaint for Relief; and,

II. Compensatory Relief in an award of damages for the First Amendment injuries suffered by Plaintiff through Defendant's acts or omissions as alleged in this Complaint in the amount of;

[i] seven-thousand, two-hundred dollars, ($7,200.00), in United States Currency for the period of time commencing on September 20, 2019 and up to and including October 12, 2019, where Plaintiff was prohibited from engaging in any pray; and,

[ii] two-thousand, seven-hundred dollars, ($2,700.00), in United States Currency for the period of time commencing on October 3, 2019 and up to and including October 11, 2019 where Plaintiff was prohibited from engaging in prayer during the evening prayer period; and,

III. Punitive damages in trebling any award of damages; and,

IV. Costs of Suit; and,

V. Reasonable Attorney's fees; and,

VI. Such other relief as the Court finds just and proper under the specific facts set forth in this Complaint for Relief.[8]

Executed: January 31, 2020

*Taylor Threefeathers Blackhawk*
Taylor Threefeathers Blackhawk
Plaintiff, Pro-Se

---

FN8. — Plaintiff does not anticipate a lengthy delay of trial readiness as Discovery would appear very straightforward and brief in this matter. The facts are clear and unambiguous with respect to the Clearly Established nature of the right involved, as are the supporting policies. Plaintiff intends to seek summary judgement pursuant to Fed.R.Civ.Proc. Rule 56(a) on the issue of Summary Judgment Declaring the Right involved was in fact a Clearly Established Right under the First Amendment.

FN9. — Formerly known as Francis Auleta, (see Albany County Supreme Court Index Number 459-16). Though legally changed in June/July of 2016, DOCCS did not acknowledge the change until October 6, 2019, which is why Defendant's Memorandum, (Ex. D), bears the former name though slightly misspelled.

(End 1st Written Complaint - 1 cover and 8 Exhibit Pages Follow)