UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAYLOR THREEFEATHERS BLACKHAWK,

                                        Plaintiff,

v.                                                                        9:20-cv-0241
                                                                          (LEK/TWD)

SERGEANT K. HUGHES,

                                        Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

TAYLOR THREEFEATHERS BLACKHAWK
  *Plaintiff, pro se*
122 ½ Lark Street
Albany, NY 12210

HON. LETITIA JAMES                                    KONSTANDINOS D. LERIS, ESQ.
Attorney General for the State of New York           Assistant Attorney General
  *Counsel for Defendant*
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER AND REPORT-RECOMMENDATION**

## I.    INTRODUCTION

This matter has been referred for a Report and Recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(c).  Plaintiff Taylor Threefeathers Blackhawk ("Plaintiff"), f/k/a Francis Auleta

(DIN 98-A-7293), commenced this *pro se* action pursuant to 42 U.S.C. § 1983, asserting his

constitutional rights were violated at Washington Correctional Facility ("Washington") while in

the custody of the New York State Department of Corrections and Community Supervision

("DOCCS").  (Dkt. No. 1.)  The Court reviewed the complaint in accordance with 28 U.S.C. §

1915 and found Plaintiff's First Amendment free exercise and retaliation claims against

Defendant Sergeant K. Hughes ("Defendant" or "Sgt. Hughes") required a response.  (Dkt. No.

4.)

Generally, Plaintiff claims Defendant violated his First Amendment right to freely

exercise his religion at Washington from September 20, 2019, through October 11, 2019, by

denying Plaintiff the "right to pray in the form of Native American smudging twice per day at

correct times."  (Dkt. No. 1 at 8;[1] *see also* Dkt. No. 29-17 at ¶ 10.)  Plaintiff also claims

Defendant retaliated against him in violation of his First Amendment rights by refusing to

implement a policy adhering to "the correct time" for smudging until Plaintiff stopped filing

grievances and complaints.  (Dkt. No. 1 at 11; Dkt. No. 29-7 at ¶ 11.)  Plaintiff states that he

satisfied the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), by

appealing Grievance WSH-7805-19 to the Central Office Review Committee ("CORC").  (Dtk.

No. 1 at 2.)

In lieu of answering, Defendant moves for summary judgment on the ground that

Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 29.)  In support of the motion,

Defendant submits declarations from Matthew Waters, Megan Striano, Kadie Hostettler, and

Thomas Mauro, Supervisors of the Inmate Grievance ("IGP") at Washington, Ulster, Gowanda,

and Greene Correctional Facilities, respectively, and Rachel Seguin, the Assistant Director of the

IGP for DOCCS.  (Dkt. Nos. 29-2, 29-3, 29-4, 29-5, 29-6.)

---

[1]  Page references to documents identified by docket number are to the page numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.  Paragraph numbers are
used where documents identified by CM/ECF docket number contain consecutively
numbered paragraphs.  Unless noted, excerpts from the record are reproduced exactly as they
appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Defendant argues Plaintiff's claims are unexhausted because Grievance WSH-7805-19 does not reference any of Plaintiff's claims asserted against Sgt. Hughes in this action and, in any event, Plaintiff commenced this action before CORC issued a response to Grievance WSH-7805-19. (Dkt. No. 29-8 at 11-16.) During the pendency of this motion, however, the Second Circuit issued a decision that squarely rejects Defendant's "alternative" argument. To that end, in *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020), the Court held that "an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations."

Here, as discussed below, it is undisputed that CORC failed to issue a decision within 30 days after receiving Plaintiff's appeal of Grievance WSH-7805-19 and Plaintiff commenced this action only after the relevant timeframe. (Dkt. No. 29-7 at ¶¶ 35-37.) Defendant acknowledges that *Hayes* controls the relevant issues and rightfully abandons his "alternative" argument with respect to exhaustion. (Dkt. No. 36.) Thus, the issue is whether Grievance WSH-7805-19 properly exhausted Plaintiff's First Amendment free exercise and retaliation claims against Defendant.

Plaintiff has not responded in opposition to the motion, despite being warned of the consequences of his failure to respond and receiving extensions of time to do so. (Dkt. Nos. 29, 31, 34, 35, 37, 38.) For the reasons explained below, the Court recommends that Defendant's motion for summary judgment on exhaustion grounds be denied.

## II.     DISCUSSION

### A.     Standard of Review

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a). Rule 56(b) provides that a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Thus, a party may move for summary judgment in lieu of an answer. *See, e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 202 (2d Cir. 2003); *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010); *Riehl v. Martin*, No. 9:13-CV-439 (GLS/TWD), 2014 WL 1289601, at *1-2 (N.D.N.Y. Mar. 31, 2014).

The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred—the moving party must demonstrate that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 337 F.3d at 206. A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, "is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist[.]" *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Where a party is proceeding *pro se*, the court must "read [his] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by

evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). As noted, Plaintiff did not respond to Defendant's motion. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Additionally, where, as here, a party has failed to respond to the movant's statement of material facts as required by Local Rule 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[2] *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see also* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion.").

---

[2] As noted, Defendant's motion and the Clerk of the Court advised Plaintiff of the consequences of failing to respond to the motion. (Dkt. Nos. 29, 31.)

Although this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on a court to conduct a search and independent review of the record to find proof of a factual dispute where a non-movant willfully fails to respond to a properly filed summary judgment motion, *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002), the Second Circuit has ruled that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," including local rules relating to requirements regarding the submission of and response to statements of material facts on summary judgment motions, and to "conduct an assiduous review of the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted).

## B.    Exhaustion of Administrative Remedies

The PLRA requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016).

The failure to exhaust is an affirmative defense that must be raised by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendant's burden to establish that plaintiff failed to meet the exhaustion requirements.  *See Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the

institution to which they are confined.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

The grievance procedure in New York State prisons is generally a three-tiered process. N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5 (2013).  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence.  *Id*. § 701.5(a).  "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility."  *Id*. § 701.5(a)(1).  A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. § 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. § 701.5(c)(3)(ii).

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision.  *Id*. § 701.5(d)(1)(i).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*.  § 701.5(d)(3)(ii).

"An inmate transferred to another facility may continue an appeal of any grievance."  *Id*. § 701.6(h)(2).  Any response to a grievance pending at the time of an inmate's transfer must be

mailed directly to that inmate at his new facility or location.  *Id.* § 701.6(h)(1).  To appeal, the inmate must mail a signed appeal form to the IGP at the facility where the grievance was filed within seven calendar days of receipt.  *Id.* § 701.6(h)(2).

At each step of IGP, a decision must be rendered within a specified time period.  "Where the IGRC and/or Superintendent do not timely respond, an inmate must appeal to 'the next step,'" assuming there is a "next step" in the grievance process.  *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)).

Generally, if a plaintiff fails to follow each of the required steps prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.  *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  *Ross*, 136 S. Ct. at 1856.  The Supreme Court has identified three examples of unavailable administrative procedures: (1) those that "operate[ ] as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) those that are "so opaque that [they] become[ ], practically speaking, incapable of use," where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" and (3) those where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1859-60.

Whether the plaintiff has exhausted his administrative remedies is a question of law. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment made in lieu of an answer where inmate failed to exhaust administrative remedies)). Nevertheless, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also Roebuck v. Hudson Valley Farms, Inc.*, 208 F.R.D. 34, 36 (N.D.N.Y. 2002) (finding summary judgment premature where plaintiff had not yet been afforded opportunity to conduct relevant discovery).

## C.    Analysis

Defendant moves pre-answer for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies. Here, there is no dispute Plaintiff's claims are the proper subject of a grievance, Washington had in place an IGP, and Plaintiff was aware of the process.[3] Rather, the parties disagree as to whether Grievance WSH-7805-19 properly exhausted Plaintiff's First Amendment free exercise and retaliation claims against Defendant.

According to Plaintiff, he exhausted his administrative remedies by "filing and fully appealing" Grievance WSH-7805-19 to CORC prior to commencing this action. (*See* Dkt. No. 1 at 2.) Defendant counters that Grievance WSH-7805-19 does not satisfy the exhaustion requirement because Plaintiff "did not mention any of his claims against Sgt. Hughes" in this

---

[3] Plaintiff is a prolific litigator and is well-versed in the IGP as evidenced by the 79 grievances he appealed to CORC from 1998 through June 15, 2020. (Dkt. No. 4 at 4-5 & n.4; Dkt. No. 29-6 at ¶ 13.)

grievance.  (Dkt. No. 29-8 at 11.)  Defendant points out that Plaintiff only claims "staff" at

Washington denied him the right to smudge since his arrival on September 30, 2020.  *Id*. at 11-

12.  According to Defendant, "the only time [P]laintiff mentioned Sgt. Hughes, or any of his

claims in this action, was in his Appeal Statement to CORC, which does not satisfy the

exhaustion requirements."  *Id*. at 12.

As recently explained by this Court, the exhaustion requirement of the PLRA gives

"corrections officials time and opportunity to address complaints internally before allowing the

initiation of a federal case."  *Funches v. Russo*, No. 9:17-CV-1292 (LEK/DJS), 2020 WL

7021588, at *3 (N.D.N.Y. Nov. 30, 2020) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir.

2006) (internal quotation marks omitted)).  "Consistent with this purpose, a prisoner must allege

facts sufficient to alert corrections officers 'to the nature of the claim,' and 'provide enough

information about the conduct' at issue 'to allow prison officials to take appropriate responsive

measures.'"  *Singh v. Lynch*, 460 F. App'x 45, 46-47 (2d Cir. 2012) (summary order) (quoting

*Johnson v. Testman*, 380 F.3d 691, 697 (2d. Cir. 2004)).  "The burden is not a heavy one; it can

be analogized to notice pleading."  *Id*. (citing *Johnson*, 380 F.3d at 697).  "All the grievance need

do is object intelligibly to some asserted shortcoming."  *Johnson*, 380 F.3d at 697 (citation

omitted).

Moreover, "[b]ecause New York's IGP does not articulate an identification requirement,

it is plain that a New York State prisoner is not required to name responsible parties in a

grievance in order to exhaust administrative remedies."  *Espinal*, 558 F.3d at 126.  However,

"[t]he mere fact that plaintiff has filed some grievance, and fully appealed all decisions on that

grievance, does not automatically mean that he can now sue anyone who was in any way

connected with the events giving rise to that grievance."  *Turner v. Goord*, 376 F. Supp. 2d 321,

324 (W.D.N.Y. 2005). Nevertheless, "a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance." *Barnes v. Annucci*, No. 9:15-CV-0777 (GLS/DEP), 2019 WL 1387460, at *10 (N.D.N.Y. Mar. 12, 2019) (quoting *Simmons v. Robinson*, No. 07-CV-7383, 2011 WL 31066, *4 (S.D.N.Y. Jan. 4, 2011)).

The evidence submitted by Defendant demonstrates that on Septmeber 30, 2019, Plaintiff filed Grievance WSH-7805-19:

> Complaint: Pursuant to Stipulation and order in Auleta v. Fischer, et al, 09-CV-6612—I am to be permitted smudging twice daily in my living quarters as set forth also in Hughes v. Goord. Copies of both of these Actions have previously been provided to this facility's Coordinating Chaplain and are also in my possession.
>
> I asked about my ability to smudge when I arrived here again today and advised staff of the Court Order. Instead of complying with the Order, my lighter was confiscated and I was told to write the Coordinating Chaplain and D.S.S. regarding smudging and the Court Order. I have done this but this does not negate the fact that twice per day this facility is in direct violation of this Order and subjects me to irreparable harm by violating my clearly established First Amendment right to practice my religion. All anyone had to do what call the Coordinating Chaplain and this may have been resolved. I am also permitted in-cube pipe smoking as well.
>
> Action Requested: Compliance with the Order regarding smudging by providing a proper method to allow me to light/burn my sage and my ability to smoke a pipe upon receipt thereof in the privacy of my living quarters and in a manner respectful of my religion.

(Dkt. No. 29-2 at 17.) On October 9, 2019, the IGRC issued its response:

> The IGRC has turned this grievance down due to Mr. Auleta informing us that he has submitted [a] new grievance giving more details pertaining same issues and more.

*Id*. at 19.  On October 10, 2019, Plaintiff indicated that he disagreed with the IGRC's response

and continued the grievance process by appealing to Washington's Superintendent.  *Id.*  The next

day, on October 11, 2019, Plaintiff was transferred to Gowanda.  (Dkt. No. 29-2 at ¶ 18.[4])

On October 31, 2019, Washington's Superintendent issued the following response:

> Per the investigation, per policy number 615 for Washington CF an
> inmate must report to one of the draft shelters at 7:00 am and 3:30
> pm for 15 minutes.  The inmate will report to the lower compound
> officer and surrender his ID.  The officer will then issue a lighter to
> the inmate to perform the ritual.  After the allotted 15 minutes the
> inmate will return the lighter to the Lower Compound Officer in
> exchange for his ID.
>
> For such reason, this grievance is denied.

*Id*. at 21.  A copy of the Superintendent's response to Grievance WSH-7805-19 was mailed to

Plaintiff at Gowanda.  *Id.* at ¶ 31.  Plaintiff appealed the Superintendent's denial of Grievance

WSH-7805-19 to CORC by signing the Appeal Statement, dated November 8, 2019, and mailing

it back to Washington stating:

> This does not negate the fact that despite the existence of policy
> #615, I was not permitted to smudge until a separate memo dated
> 10/2/19 was issued as policy #615 does not, as it existed at the time
> of my grievance, make any provision regarding a lighter or a
> method to light the sage.
>
> Further, as raised in my grievance, denying my ability to smudge
> violated my Court Order and thus my clearly established free
> exercise of religion rights under the 1st Amendment and 14th
> Amendment due process rights.
>
> Additionally, as raised to Iman Yaki, Sgt. K. Hughes, and the
> entire I.G.R.C., 3:30 pm is in direct contradiction to Directive

---

[4]  Plaintiff was temporarily housed at Ulster from October 11, 2019, through October 15, 2019,
while he was in transit to Gowanda.  (Dkt. No. 29-7 at ¶ 15.)  Plaintiff remained at Gowanda
from October 15, 2019, until July 9, 2020, apart from when he held in-transit status at Ulster and
Greene between November 12, 2019, and December 17, 2019, for an outside trip.  *Id*. at ¶ 16.
On July 9, 2020, Plaintiff was released from custody and is currently supervised under
Community Supervision.  *Id*. at ¶ 17.

> 4202, my Court Order, and my sincerely held religious beliefs as smudging is to occur in the a.m, before the morning meal, and in the <u>evening</u>, not the afternoon.  Prayer at 3:30 violates my 1st and 14th Amendment rights as above and the tenets of my and the Native American faith group.
>
> I have yet to receive a Committee decision on a second, more detailed smudging grievance I filed at WCF despite writing the IGRC Supervisor and the Director of IGP in Central Office.  I've asked that it be appealed to the next step but have heard nothing.
>
> As I am being obstructed from appealing that grievance, I will consider such fully exhausted under the P.L.R.A. of 1997.

*Id*. at 21-22.

On November 22, 2019, CORC received Plaintiff's appeal of Grievance WSH-7805-19. (Dkt. No. 29-6 at ¶ 15.)  As of February 28, 2020, the date Plaintiff signed his federal complaint in this action, CORC had not issued a response to Grievance WSH-7805-19.  *Id*. at ¶ 16.[5]  A copy of the computer printout from the CORC database reflects that as of June 25, 2020, CORC had still not issued its response to Grievance WSH-7805-19.  *Id*. at 7.

According to Waters, Washington's IGP Supervisor, Plaintiff also "attempted" to file a grievance dated October 9, 2019,[6] which he presumes is the grievance that Plaintiff mentioned to the IGRC during the investigation of Grievance WSH-7805-19.  (Dkt. No. 29-2 at ¶ 37.)  In his declaration, Waters states the October 9th Complaint, "was received by Washington's grievance office on or about October 15, 2019, *after* Plaintiff transferred out of Washington."  *Id*.  A copy of the October 9th Complaint is attached to his declaration as Exhibit G.  *Id*.

---

[5]  As set forth above, Defendant abandoned his "alternative" argument that Plaintiff's claims are unexhausted because Plaintiff commenced this action before CORC issued its decision.  (Dkt. No. 36.)

[6]  Defendant and Waters refer to Plaintiff's unfiled grievance dated October 9, 2019, as "the October 9th Complaint" and, for ease of reference, the Court will do the same.  (Dkt. No. 29-7 at ¶ 41; Dkt. No. 29-3 at ¶ 26.)

In the October 9th Complaint, Plaintiff references, *inter alia*, a memorandum issued by Sgt. Hughes dated October 2, 2019 (the "Hughes Memo"), regarding his "ability to smudge twice daily."  *See id*. at 24.  According to Plaintiff, the Hughes Memo, *inter alia*, violates tenets of his faith, exposes him to inclement weather and adverse conditions, designates an improper "evening" smudge time as 3:30 pm, improperly designates smudging as a "service," discriminated against Plaintiff, and was issued in retaliation for Plaintiff's prior grievance and complaints:

> In sum, the facility has me smudging in a dirty, unheated draft hut, at incorrect times, under incorrect standards, in violation of its own (DOCCS') policies and several Court Orders.  The conduct/policy is designed as a tool of retaliation meant to prevent specifically Native American religious practitioners from practicing their faith, and contains a specific veiled threat aimed only at myself in response to my prior grievance and complaints regarding non-accommodation.

*Id*. at 27.  At the bottom of the fifth page, after his signature, it states, the "attached documents requested on 10/9/19 by IGRC Members."  *Id*. at 28.

For his part, Waters explains that because Plaintiff was transferred to Gowanda on October 11, 2019, and was no longer housed at Washington, the October 9th Complaint, received by Washington's grievance office on October 15, 2019, was "rejected," "returned," and mailed to Plaintiff at Gowanda, with instructions to file the "Grievance dated 10/9/19" according to Directive #4040 ("The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility.").  (Dkt. No. 29-2 at ¶¶ 18, 38.)  Waters states, upon information and belief, Plaintiff refused to accept this letter and it was subsequently returned to him at Washington.  *Id*. at ¶ 38.

By letter dated November 18, 2019, Waters acknowledged receipt of Plaintiff's appeal of

Grievance WSH-7805-19 to CORC and returned Plaintiff's October 9th Complaint by mailing it

to Plaintiff at Gowanda:

> You have been sent 3 different legal correspondences by our
> office. We have received 2 of them back that state you have
> refused. Your Superintendent appeal was received for WSH-7805-
> 19 and will be sent to CORC. I am returning all that was sent to
> you again that was originally refused and sent back to us by
> Gowanda CF.

*Id.* at 32; *see also id.* at ¶ 38.

On December 18, 2019, Plaintiff filed Grievance GWD-14837-19, complaining that

Washington's grievance office wrongfully rejected a grievance that he filed on October 9, 2019,

when he was housed at Washington, and attached a copy of the October 9th Complaint. (Dkt.

No. 29-3 at ¶ 26.) In Grievance GWD-14837-19, Plaintiff states:

> On 10/9/19 I placed a grievance in the box at Washington Corr.
> Facility. I did not know that I had a transfer pending, but the
> Sergeant that was in part the subject of the grievance did as it was
> in retaliation for my asserting my right to practice my faith as later
> admitted.
>
> The Committee, the Sergeant included, placed in writing their
> awareness that this had been filed. I've written the facility IGRC
> Supervisor several times, over the last two months, looking for a
> Committee decision.
>
> Upon return from Court on 12/17/19 I received the enclosed letter
> and grievance stating I should have filed it here as I am in
> Gowanda—I filed at Washington while there as admitted in
> writing by the Committee at a hearing where even after objection
> by myself was made—and conceded by the Committee and the
> Sergeant—the Sergeant affected by and subject the grievance sat
> on the hearing.
>
> The letter also says I refused, according to Gowanda, receipt of
> this on a previous occasion. This is incorrect. I previously wrote
> the Mail Room Civilian after being called once to legal mail, I
> missed the movement, and not being called a second time because

> the C.O. doing legal mail the next night called the wrong dorm as I
> had moved.  Upon learning that some mail from Washington had
> been sent back, I began writing Mr. Waters whom responded while
> I was out to Court.
>
> In sum, the IGRC Supervisor and Sergeant that is the subject of the
> grievance improperly looked up my transfer status, saw a pending
> upcoming date, and held the grievance instead of filing it until after
> I left Washington in an effort to obstruct the process and in
> retaliation for my attempts to vindicate my religious freedoms.

*Id*. at 20-21.

On January 13, 2020, the IGRC issued the following response to Grievance GWD-14837-

19:

> Per the grievance complaint the grievant asserts that his grievance
> was wrongfully not filed at Washington CF.  IGPS W . . . provided
> a response asserting that his office sent the grievant the pieces of
> legal mail.  They received two back indicating that the inmate
> refused, and they received his appeal to CORC for WSH-7805-19.
> Upon receipt of additional correspondence from the grievant he
> asserts that he returned the grievant's mail an additional time.
> However, he indicates that these grievances were not received by
> him till after the grievant had transferred.  Therefore, they were
> being returned for him to file at his current facility in accordance
> with Directive #4040.
>
> Based on the investigation, IGPS W . . . appears to have
> appropriately followed directive #4040.  The grievance is denied.

*Id*. at 29 (alterations in original).

On January 14, 2020, Plaintiff indicated that he disagreed with the IGRC response and

wished to appeal to the Superintendent and explained:

> This grievance was agreed to be adjourned so I could provide a
> document in my possession sustaining it was filed while at WCF—
> the hearing was stopped, an adjournment granted, and yet I
> received this the following day after adjournment.

*Id*.  On January 21, 2020, Gowanda's Superintendent issued a response denying Plaintiff's

appeal of Grievance GWD-14837-19.  *Id*.  According to Kadie Hostettler, Gowanda's IGP

Supervisor, a review of the records maintained by Gowanda's grievance office indicates Plaintiff

did not appeal the Superintendent's response to Grievance GWD-14837-19 to CORC.  (Dkt. No.

29-3 at ¶ 36.)

Considering the above, the Court finds Grievance WSH-7805-19 appears to deal with the

exact allegations in Plaintiff's verified complaint.  *Compare*  Dkt. No. 29-2 at 17 ("Pursuant to

Stipulation and order in *Auleta v. Fischer*, et al, 09-CV-6612—I am to be permitted smudging

twice daily in my living quarters as set forth also in *Hughes v. Goord*.") *with* Dkt. No. 1 at 7

("Plaintiff is permitted to engage the practice of smudging, as defined and provided for in the

settlement agreement in Hughes v. Goord[.]"); *compare* Dkt. No. 29-2 at 7 ("I asked about my

ability to smudge when I arrived here again today and advised staff of the Court Order.  Instead

of complying with the Order, my lighter was confiscated and I was told to write the Coordinating

Chaplain and D.S.S. regarding smudging and the Court Order.") *with* Dkt. No. 1 at 7, 9

("Plaintiff was interviewed by Defendant, during which Plaintiff inquired as to the policy at

W.C.F. with respect to smudging, and advised Defendant as to the existence of Plaintiff's Court

Order and its smudging provision.  . . .  Defendant advised Plaintiff that Defendant was aware of

the requirements that Native American inmates be accommodated with respect to smudging . . .

and advised Plaintiff to 'write a tab" to the Coordinating Chaplain.").

Moreover, the Court notes that the Superintendent's response to Grievance WSH 7805-

19, *supra*, is virtually identical to the second paragraph of the Hughes Memo, dated October 2,

2019, attached as an exhibit to Plaintiff's complaint:

> After consulting the local policy, I have devised the following to
> accommodate smudging for inmate Alueta (sic), Francis
> (98A7293) currently of D2-47B.
>
> Per the policy numbered 615 for Washington Correctional Facility
> the inmate must report to one of the draft shelters at 7 AM and

> 3:30 PM for fifteen minutes.  The inmate will report to the Lower
> Compound officer and surrender his ID.  The officer will then
> issue a lighter to the inmate to perform the ritual.  After the allotted
> fifteen minutes the inmate will return the lighter to the Lower
> Compound officer in exchange for his ID.
>
> The inmate will use one of the draft shelters as a "smudge hut" and
> be responsible for any clean up following the smudging ritual.  As
> this is viewed as a service, should the inmate be put on Feed-In or
> KLNPH status he would have to write the superintendent to be
> escorted to Lower Compound to conduct this ritual.

(Dkt. No. 1-1 at 5.)

Here, bearing in mind that the "grievance pleading standard" is "liberal," *Brownell*, 446 F.3d at 310, coupled with the fact that inmates are not required to name specific officers in grievances, *see* 7 N.Y.C.R.R. § 701.5(a)(2), and "a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance" *Barnes*, 2019 WL 1387460, at *10, and when viewed in the light most favorable to Plaintiff, it appears Plaintiff adequately alleged facts "sufficient to alert corrections officials 'to the nature of the claim,' and 'provide[d] enough information about the conduct' at issue 'to allow prison officials to take appropriate measures.'"  *Singh*, 460 F. App'x at 47 (quoting *Johnson*, 380 F.3d at 697).  Furthermore, resolving all ambiguities and drawing all reasonable inferences in Plaintiff's favor, on this record, the Court finds, at the very least, unresolved issues of material fact regarding availability under *Ross* precluding summary judgment in Defendant's favor on exhaustion grounds.

In light of the foregoing, the Court finds Defendant has not met his burden of showing Plaintiff failed to exhaust his available administrative remedies under the IGP.  Therefore, the Court recommends that Defendant's motion for summary judgment in lieu of answer be denied.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 29) be

**DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated:  January 19, 2021
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by
mail, three additional days will be added to the fourteen-day period, meaning that you have
seventeen days from the date the Order and Report-Recommendation was mailed to you to serve
and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a
Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2014 WL 1289601
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Charles Jacob RIEHL, Plaintiff,

v.

Donna MARTIN et al., Defendants.

No. 9:13–cv–439 (GLS/TWD).
|
Signed March 31, 2014.

**Attorneys and Law Firms**

Charles Riehl, Comstock, NY, pro se.

Hon. Eric T. Schneiderman, Douglas J. Goglia, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### *I. Introduction*

**\*1** Plaintiff *pro se* Charles Jacob Riehl commenced this action against defendants Donna Martin, Howard Matasar, and Harold Graham, alleging violations of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)[1] and his First Amendment right to the free exercise of religion pursuant to 42 U.S.C. § 1983. (Compl., Dkt. No. 1 at 11–20.) Defendants moved for summary judgment in lieu of an answer, (Dkt. No. 18), and Riehl responded to the motion with new allegations, (Dkt. No. 21), and also sought to amend certain dates alleged in his complaint, (Dkt. No. 20).[2]

[1]     See 42 U.S.C. §§ 2000cc–2000cc–5.

[2]     Riehl's request to amend the dates was granted. (Dkt. No. 34 at 22.)

In an Order and Report–Recommendation (R & R) filed December 19, 2013, Magistrate Judge Thérèse Wiley Dancks recommended that all claims be dismissed with the exception of Riehl's claim under § 1983 for a Free Exercise Clause violation as against Martin and Matasar. (Dkt. No. 34 at 22.)

Judge Dancks also recommended that Riehl be granted leave to amend his complaint. (*Id.*) Pending before the court are Riehl's objections to the R & R. (Dkt. No. 37.) For the reasons that follow, the R & R is adopted in its entirety.

### *II. Background*

Riehl, who was incarcerated at Auburn Correctional Facility during the relevant time period, identifies himself as an "observant orthodox Jewish man." (Defs.' Statement of Material Facts (SMF) ¶¶ 1–3, Dkt. No. 18, Attach. 4; Compl. at 13.) In dispute are Riehl's allegations that at the Passover Seder in April 2012, his meal contained chametz, a leavening agent, and was not prepared according to Jewish dietary law, which resulted in him not being able to partake in the holy day. (Compl. at 4, 22.) In response to defendants' motion for summary judgment, Riehl alleged new facts that significantly expanded upon his claim that he was served forbidden foods. (Dkt. Nos. 21 and 24.) Riehl's new allegations were considered by Judge Dancks. (Dkt. No. 34 at 11–13.)

### *III. Standard of Review*

Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan.18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error.[3] *See id.*

[3]     "[A] report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights." *Almonte,* 2006 WL 149049, at *6.

### *IV. Discussion*

Riehl's objections do not take issue with any particular aspect of Judge Dancks' recommendations. (Dkt. No. 37.) The thrust of his objections is merely a rehashing of arguments made

in response to defendants' motion for summary judgment. (*Compare* Dkt. Nos. 21 and 24, *with* Dkt. No. 37.) In particular, Riehl "objects" to portions of the declarations of Matasar and Martin. (Dkt. No. 37 at 1–4.) Since Riehl's objections do not point out any specific shortcomings in the R & R, and, instead, regurgitate earlier-raised arguments, review for clear error is warranted. *See Almonte,* 2006 WL 149049, at *4, *6.

*2 Having thoroughly reviewed the R & R, the court finds no clear error in Judge Dancks' recommendations, and adopts it in its entirety.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Therèse Wiley Dancks' Order and Report–Recommendation (Dkt. No. 34) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 18) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to all claims against Graham; and

**GRANTED** as to Riehl's RLUIPA claim against Martin and Matasar; and

**GRANTED** as to any request for injunctive relief; and

**DENIED** in all other respects, leaving only a claim under 42 U .S.C. § 1983 for a violation of the Free Exercise Clause as to Martin and Matasar; and it is further

**ORDERED** that Riehl is granted leave to amend his complaint to assert the new allegations against Martin and Matasar raised in his opposition papers (Dkt. Nos. 21 and 24); and it is further

**ORDERED** that, with respect to any amended complaint filed by Riehl, he shall include factual allegations describing the role of Martin and Matasar sufficiently to allow the court to assess whether a plausible claim has been stated against them; and it is further

**ORDERED** that, if Riehl files an amended complaint, it shall be a wholly integrated and complete pleading with separately numbered allegations that does not rely upon, or incorporate by reference, the original complaint; and it is further

**ORDERED** that the Clerk provide a copy of this MemorandumDecision and Order to the parties.

### IT IS SO ORDERED.

### *ORDER and REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This *pro se* civil rights action, commenced by Plaintiff Charles Riehl pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D .N.Y. L.R. 72.3(c). Plaintiff claims that while he was confined in Auburn Correctional Facility ("Auburn"), Defendants Donna Martin ("Martin"), Food Administrator at Auburn; Howard Matasar ("Matasar"), a Rabbi assigned to Auburn on a part-time basis; and Harold Graham ("Graham"), Auburn Superintendent, were guilty of violating his First Amendment right to the free exercise of religion, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.,* and of negligence in serving him food that violated Jewish law at the first Passover Seder in April of 2012. (*See generally* Dkt. No. 1.) Plaintiff seeks injunctive relief and compensatory and punitive damages. (Dkt. No. 1 at 21.)

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in lieu of answering Plaintiff's Complaint. (Dkt. No. 18.) Plaintiff has filed papers in opposition to the motion. (Dkt. Nos. 21 and 24.) Plaintiff has also filed a motion to amend his Complaint to change the dates for Passover in 2012 from April 18 through April 26, 2012 to the correct dates, April 6 through April 14, 2012.[1] (Dkt. No. 20.) Defendants have opposed the motion on futility grounds. (Dkt. No. 23.) I hereby grant Plaintiff's motion to amend his Complaint to reflect the correct dates for Passover in 2012, and direct that for purposes of this motion, Plaintiff's Complaint be deemed so amended. For the reasons that follow, the Court recommends that Defendants' motion for summary judgment (Dkt. No. 18) be granted in its entirety as to Defendant Graham. The Court

further recommends that the motion be granted in part and denied in part, without prejudice, as to Defendants Martin and Matasar, and that Plaintiff be granted leave to file an amended complaint asserting the new claims set forth in his opposition papers.

[1]    Plaintiff states in his motion to amend that "[a]lso in consideration of the courts in amending this complaint also plaintiff will ask the court to afford compensation for actual damages as well [as] punitive damages for relief." (Dkt. No. 20.) Inasmuch as Plaintiff's Complaint, as originally filed, seeks relief in the form of both compensatory and punitive damages, there is no need for amendment of the Complaint with regard to the relief sought. (Dkt. No. 1 at 21.)

## I. BACKGROUND

**\*3**  In his Complaint, Plaintiff identifies himself as an Orthodox Jew. (Dkt. No. 1 at 13.) Plaintiff claims that the food served to him at the Seder held on the first night of Passover in April of 2012, was not prepared according to the kashrut (Jewish dietary law) in that it contained chametz,[2] which Jews are prohibited from eating during Passover. (Dkt. No. 1 at 4.) According to Plaintiff, because the foods were not prepared in accordance with the kashrut, he was unable to partake of the meal. *Id.* Plaintiff contends that the improper handling and preparation of food during Passover can result in physical and mental harm to observant Jews. *Id.* at 8–9. Plaintiff claims that Defendants Martin and Matasar were both negligent in violating his right under the free exercise clause to eat properly prepared food for Passover. (Dkt. No. 1 at 11, 14–16.)

[2]    The Torah directs Jews not to eat "chametz" during Passover. *See* Exodus 12:15. "Chametz" is "leven"—food made of grain and water that has been allowed to ferment and "rise." *See* http://www.chabad.org/librar    y/howto/wizard_cdo/aid/1755/jewish/1–What–isChametz.htm; *see also* Dkt. No. 1 at 22–23, 35–39.

Plaintiff has not described the meal about which he complains other than to allege in his Complaint (Dkt. No. 1) that it contained chametz, and in his opposition papers that sardines were removed from the can and placed in paper cups, and that the salad dressing, condiments, butter, and the hot meal served were not labeled kosher for Passover.[3] (Dkt. Nos. 21 at ¶ 1;

24 at ¶ 4.) Plaintiff has not identified the type(s) of chametz he found in the meal. (*See* Dkt. No. 1.)

[3]    Plaintiff claims to have told Defendant Matasar about the sardines in cups, and that the salad dressing, condiments and butters served on the first night Seder were not kosher for Passover. (Dkt. No. 24 at ¶ 4.)

Defendant Martin was Food Administrator at Auburn during Passover in 2012. (Dkt. No. 18–6 at ¶ 1.) As Food Administrator, Martin was responsible for overseeing and coordinating the preparation and provision of food to inmates, including ensuring that proper amounts of food were obtained; food was stored, handled and prepared properly; and kitchen facilities were properly maintained. *Id.* at ¶ 2. According to Martin, meals provided to Jewish inmates who keep kosher have been the same at Auburn for a number of years.[4] *Id.* at ¶ 4. The inmates are provided with cold alternative diets ("CADs"), which are kosher, or kosher for Passover as appropriate, on a daily basis. *Id.* An exception is made for the evening meals on certain Jewish holidays such as the two nights of Shavout, the two nights of Rosh Hashana, the first and last nights of Sukkoth, and all eight nights of Passover. *Id.*

[4]    *See also* Defendant Matasar's Declaration. (Dkt. No. 18–5 at ¶¶ 6–8.)

Observant Jewish inmates are provided with pre-packaged and prepared hot meals certified as kosher by the Union of Orthodox Congregations ("OU") for Shavout, Rosh Hashana, and Sukkoth. *Id* . at ¶ 5. The kosher meals, manufactured by Milmar Food Group, LLC, are sold under the "Valley Stream" label, and purchased from SYSCO Food Services Corporation ("SYSCO") by the Department of Corrections and Community Supervision ("DOCCS"). *Id.* Martin has submitted an exemplar of a label from the boiled seasoned beef dinner, bearing the OU kosher certification trademark, as an example of the meals served for Shavout, Rosh Hashana, and Sukkoth. *Id.;* Dkt. No. 18–7 at 1.

Regular kosher certification is not sufficient for Passover, and foods that are kosher during the rest of the year are not kosher for Passover. (Dkt. No. 18–5 at ¶ 8.) Therefore, according to Martin, on the eight nights of Passover, Jewish inmates are given pre-packaged and prepared hot Spring Valley meals certified by OU as "Kosher for Passover." (Dkt. No. 18–6 at ¶ 6.) Martin has also submitted an exemplar of a label from the packaging for the baked fish tomato herb dinner

labeled "Kosher for Passover." (Dkt. No. 18–8 at 1–2.) A March 21, 2012, invoice from SYSCO for meals delivered to the DOCCS Food Production Center in Rome, New York included a total of 147 kosher for Passover meals and 42 kosher beef in broth boiled dinners not labeled as kosher for Passover and not certified as kosher for Passover on the Orthodox Union December 28, 2011, kosher certification letter. [5] (Dkt. Nos. 18–10 and 18–9.) Martin's involvement in providing kosher and kosher for Passover meals to Jewish inmates is limited to ordering the proper number of meals from the Food Production Center, based on the count of observant Jewish inmates provided by the Facility Rabbi; ensuring that the meals are properly stored and refrigerated upon delivery; and making sure they are warmed before being served to the inmates. (Dkt. No. 18–6 at ¶ 9.) Defendant Matasar visits correctional facility kitchens approximately monthly to ensure that the food provided to Jewish inmates is prepared in accordance with Jewish dietary laws of kashrut. (Dkt. No. 18–5 at ¶ 3.) Matasar has no responsibility for, or direct involvement in, providing food to inmates, and he claims to have played no role in the preparation or provision of meals provided to Plaintiff during the 2012 Passover holiday. *Id.* at 18–5 at ¶¶ 3, 10.

[5]     Except for noting that there are Jewish holidays in which regular Spring Valley kosher meals are served, Defendants have provided no explanation for why the 42 beef in broth boiled dinners, which were not certified as Kosher for Passover, were purchased at the same time as the Kosher for Passover meals and were identified as "frozen Passover dinners" on the description of goods received at the Food Production Center on March 21, 2012. (Dkt. Nos. 18–5 at ¶ 7; 18–6 at ¶ 5; 18–9 at 2.)

 *4 Matasar and Martin both claim to be unaware of any instance in which Plaintiff has been denied a Passover meal, or provided with a meal that was not kosher for Passover, and to have no reason to suspect that the pre-packaged and prepared kosher for Passover hot meals provided to Plaintiff during Passover contained foods that were not kosher for Passover. (Dkt. Nos. 18–5 at ¶ 9; 18–6 at ¶ 10.) Like Plaintiff, Defendants have failed to describe the meal served to Plaintiff at the first Passover Seder in 2012.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint and applied for leave to proceed *in forma pauperis* in this action on April 22, 2013. (Dkt.

Nos. 1 and 2.) On June 10, 2013, Plaintiff moved for the appointment of counsel. (Dkt. No. 10.) In a Decision and Order filed on June 25, 2013, Chief Judge Sharpe granted Plaintiff's *in forma pauperis* application, denied his motion for the appointment of counsel without prejudice, and dismissed Plaintiff's claims for money damages against Defendants in their official capacities with prejudice on the grounds that the claims are barred by the Eleventh Amendment to the Constitution. (Dkt. No. 12.) The Summons and Complaint were served on Defendants Martin, Graham, and Matasar on July 2, 15, and 17, 2013, respectively. (Dkt.Nos.15–17.)

Defendants filed the motion for summary judgment in lieu of answering the Complaint now before me for Report and Recommendation on July 19, 2013. [6] (Dkt. No. 18.) Plaintiff thereafter filed his motion to amend his Complaint to reflect the proper dates for Passover in 2012 (Dkt. No. 20) and his opposition to Defendants' motion. (Dkt. Nos. 21 and 24.)

[6]     Plaintiff moved for a default judgment on August 19, 2013, based upon Defendants' failure to answer the Complaint. (Dkt. No. 28.) Defendants opposed the motion and requested that the obligation to answer be stayed pending a decision on their summary judgment motion (Dkt. No. 29), and on September 19, 2013, the Court issued a Text Order granting Defendants' request for a stay. (Dkt. No. 32.)

In August of 2013, Plaintiff filed a second motion for assignment of counsel. (Dkt. No. 25.) The Court denied the motion in a September 27, 2013, Decision and Order. (Dkt. No. 33.)

## III. APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin,* 467 F.3d at 272–73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment. *Cordiano v. Metacon Gun Club, Inc.,* 575 F.3d 199, 204 (2d Cir.2009) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998).

**\*5** In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008). Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Salahuddin v. Coughlin,* 999 F.Supp. 526, 535 (S.D.N.Y.1998) ("pro se parties are to be given special latitude on summary judgment motions.") (citations and internal quotation marks omitted). However, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz,* No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876 at \*3, 1999 U.S. Dist. LEXIS 16767 at \*8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)). [7]

[7]     Copies of unpublished decisions cited herein will be mailed to Plaintiff as a *pro se* litigant. *See Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

## IV. ANALYSIS

### A. Deficiencies in Plaintiff's Opposition Papers

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se* ] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003). In opposing Defendants' summary judgment motion, Plaintiff failed to respond to the Statement of Material Facts filed by Defendants in the manner required under N.D.N.Y. L.R. 7.1(a)(3). [8] Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, [9] and (2) the nonmovant, if proceeding *pro se,* has been specifically advised of the possible consequences of failing to respond to the motion. [10] *See Champion, v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (citation and internal quotation marks omitted). In deference to Plaintiff's *pro se* status, and in light of the fact that Defendants have moved for summary judgment so early in the litigation, I have opted to review the entire record in determining if there are material facts in dispute.

[8]     L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts. Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Plaintiff's partial response to Defendants' Statement, found in his Motion to Dismiss Summary Judgment, is limited to disagreement with ¶¶ 14, 18, and 22 in Defendants' Statement, and as to those, Plaintiff has failed to set forth specific citations to the record where the claimed factual issue arises.

[9]     L.R. 7.1(a)(3) provides that *"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* However, *see Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d. Cir.2004) ("[I]n determining whether the moving

party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

10    Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion. (Dkt. No. 24 at 3.)

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann,* 604 F.3d 72, 81 (2d Cir.2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation marks omitted). Where, as here, the Court elects to conduct an independent review of the record on a motion for summary judgment, a plaintiff's verified complaint should be treated as an affidavit.[11] *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist ....") (citations omitted). Plaintiff's Opposition to the Declaration of Defendant Howard Matasar (Dkt. No. 24), which was signed under penalty of perjury, also constitutes admissible evidence that can be considered in opposition to Defendants' motion. *See* 28 U.S.C. § 1746 (authorizing the use of declarations made under penalty of perjury when an affidavit is required or permitted to be used).

11    Plaintiff's Complaint in this case was properly verified by declaration under 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65–66 (2d Cir.1999) (use of the language "under penalty of perjury" substantially complies with 28 U.S.C. § 1746).

**\*6** Plaintiff's Motion to Dismiss Summary Judgment (Dkt. No. 21) is unsworn, and unsworn statements are generally inadmissible in opposition to a motion for summary judgment. *See, e.g., Witzenburg v. Jurgens,* No. CV–05–4827 (SJF)(AKT), 2009 WL 1033395, at \*11, 2009 U.S. Dist. LEXIS 32126 (E.D.N.Y. April 14, 2009) (unsworn declarations are inadmissible for purposes of Rule 56 and cannot be considered by the court in deciding the motion for summary judgment). Even so, on summary judgment motions involving *pro se* plaintiffs, courts have been known to consider unsworn submissions in opposition. *See, e.g., Hamm*

*v. Hatcher,* No. 05 Civ. 503(ER), 2013 WL 71770, at \*7, 2013 U.S. Dist. LEXIS 2203, \*19–20 (S.D.N.Y. Jan.7, 2013) (to afford *pro se* plaintiff special solicitude, the court considered unsworn statements in his opposition papers but only to the extent based on personal knowledge or supported by other admissible evidence in the record, on the assumption that if the allegations were sufficient to raise an issue of fact, plaintiff would be given the opportunity to submit an affidavit properly attesting to the allegations); *Robles v. Khahaifa,* No. 09CV718 (HBS), 2012 WL 2401574, at \*7, 2012 U.S. Dist. LEXIS 87834, at \*20–22 (W.D.N.Y. June 25, 2012). In deference to Plaintiff's *pro se* status, and because the action is at such an early stage, the Court will consider Plaintiff's unsworn Motion to Dismiss Summary Judgment in opposition to Defendants' motion.

## B. New Claims Raised by Plaintiff in his Opposition Papers

Plaintiff's Complaint alleges that there was chametz in the meal served at the Seder on the first night of Passover in 2012. (Dkt. No. 1 at 4, 18.) However, in his opposition to Defendants' summary judgment motion, Plaintiff goes well beyond the allegations in his Complaint. He claims that in addition to containing chametz, the salad dressing, condiments, butter, and the hot meal served at the first Seder were not labeled kosher for Passover. (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.) Plaintiff also claims that the 42 kosher, but not kosher for Passover, beef in broth boiled dinners listed in the SYSCO invoice supplied by Defendants were given to inmates throughout Passover in 2012. (Dkt. No. 21 at ¶ 3.) He does not, however, specifically claim that he was served one of those beef dinners at the Seder on the first evening of Passover. In addition, in his opposition papers, Plaintiff complains that during Passover in 2012, the sardines and tuna served for lunch each day were taken out of the cans and placed in small dixie cups in violation of kashrut, the food in the lunch bags given inmates during Passover contained chametz, and the dressings, butters, and tuna fish were not kosher for Passover. (Dkt. No. 21 at ¶ 6.) According to Plaintiff, when he complained to Defendant Matasar about the lunch bags containing chametz and asked him to go to the kitchen and fix the situation, Matasar responded that Plaintiff was in prison and he should not come to prison if he wanted to eat kosher. Plaintiff claims Matasar told him he could eat the lunches or not. *Id.*

**\*7** In their Reply Memorandum of Law, Defendants argue that under well-settled law, Plaintiff cannot raise new claims in papers in opposition to a motion for summary judgment.

(Dkt. No. 22 at 4–5.) *See, e.g., Shah v. Helen Hayes Hosp.,* 252 F. App'x 364, 366 (2d Cir.2007) (holding that the district court did not err in disregarding allegations the plaintiff raised for the first time in response to the defendant's motion for summary judgment); *Jones v. Fischer,* No. 9:10–cv–1331 (GLS/ATB), 2013 WL 5441353, at *15, n. 23, 2013 U.S. Dist. LEXIS 140318, at *47, n. 23 (N.D.N.Y. Sept. 27, 2013) ("Generally a party may not raise new claims in his or her response to a motion for summary judgment.") (collecting cases). However, the stated rationale for disregarding claims first asserted in opposition to a motion for summary judgment does not fit in this instance. *See Beckman v. U.S. Postal Service,* 79 F.Supp.2d 394, 407–08 (S.D.N.Y.2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (citations and internal quotation marks omitted); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 963 F.Supp. 1342, 1359 (S.D.N.Y.1997) (attempt by plaintiff to add claim never addressed in the complaint is inappropriate in a brief in opposition to a motion for summary judgment made after the close of discovery without leave of court); *see also Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 219–20 (N.D.N.Y.2008) (McAvoy, J. *adopting* ReportRecommendation of Lowe, M.J.) (in an action filed in November of 2005, where discovery had closed in December of 2006, court concluded that new factual allegations raised by plaintiff in opposition to summary judgment motion should not be considered, where "the four new allegations [were] not made in response to a motion to dismiss (which typically occurs relatively early in an action, before discovery has occurred) ... [and] the net effect of permitting Plaintiff to so change the landscape of his claims at this late stage of the action would be to deprive Defendants of the fair notice envisioned by Fed.R.Civ.P. 8.").

Because Defendants moved for summary judgment in lieu of filing an answer within weeks of service of Plaintiff's Complaint and prior to any discovery in the action, the Court will consider the new factual allegations and claims raised in Plaintiff's opposition papers.

## C. Plaintiff's Claims Under RLUIPA

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government shows that the burden imposed "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA includes an express private cause of action: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc–2(a). "Government" includes, *inter alia,* States, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law. 42 U.S.C. § 2000cc–5(4)(A).

 **\*8** In his June 25, 2013, Decision and Order, Chief Judge Sharpe dismissed Plaintiff's RLUIPA and § 1983 claims for money damages against Defendants in their official capacities on the grounds that those claims are barred by the Eleventh Amendment.[12] (Dkt. No. 12 at 7.) Recently, in *Washington v. Gonyea,* 731 F.3d 143 (2d Cir.2013), the Second Circuit held that RLUIPA does not create a private cause of action against state officers in their individual capacities. *Id.* at 145–46. Therefore, I recommend that Defendants' motion for summary judgment dismissing Plaintiff's RLUIPA claims against them in their individual capacities be granted.

[12]     Plaintiff has requested a temporary restraining order against Defendants in his Complaint. (Dkt. No. 1 at 21.) All of the events of which Plaintiff complains took place at Auburn, where Defendants are employed. (*See generally* Dkt. No. 1.) Plaintiff has since been transferred from Auburn and is presently incarcerated at Great Meadow Correctional Facility ("Great Meadow"). (Dkt. No. 31.) Great Meadow is not one of the correctional facilities to which Defendant Matasar is assigned. (Dkt. No. 18–5 at ¶ 1.) Therefore, I recommend that Defendants be granted summary judgment dismissing Plaintiff's request for what appears to be injunctive relief under RLUIPA and the Free Exercise Clause as moot. *See Washington,* 731 F.3d at 144, n. 1; *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (transfer from a correctional facility generally moots a claim for injunctive relief against officials in the facility).

## D. Plaintiff's Free Exercise Claim Against Defendant Graham

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.").* "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (citing *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 872, 873 (2d Cir.1995). [13]

[13]  The Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) has arguably nullified some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

The only allegations in the Complaint regarding Graham are that he does not have "a strong institutional interest in the effectiveness of beliefs in [Plaintiff's] religious practices of observing Judaism and the holy day of Passover," and that he was negligent with regard to the Passover menu. [14] (Dkt. No. 1 at 14.) In his opposition papers, Plaintiff's sole claim of personal involvement by Graham is that Graham told Defendant Martin to take the sardines and tuna out of the cans before serving them to the inmates which, according to Plaintiff, violated the kashrut. (Dkt. No. 21 at ¶ 6.) [15] "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). The reach of the free exercise clause extends to "an inmate's diet and participation in religious meals." *Johnson v. Guiere,* No. 9:04–CV–57 (DNH/DEP), 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 98781, *14–15 (N.D.N.Y. Oct.17, 2007) ("Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.").

[14]  Mere negligence is insufficient to establish liability on the part of a prison official under § 1983. *See Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

[15]  Plaintiff is required to demonstrate that the beliefs he professes are "sincerely held" and in his "own scheme of things, religious." *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citation and internal quotation marks omitted). Plaintiff has described himself as an "observant Orthodox Jewish man" (Dkt. No. 1 at 13), and Defendants have not disputed Plaintiff's self-characterization. Therefore, the Court will assume for purposes of Defendants' motion that Plaintiff's Jewish faith is a sincerely held religious belief.

**\*9** However, the protections afforded inmates by the First Amendment are not as extensive as the rights enjoyed by ordinary citizens because "[a] prison inmate ... retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky,* 391 F.3d 106, 113 (2d Cir.2004) (citation and internal quotation

marks omitted); *see also Ford,* 352 F.3d 588 ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, ... are the interests of prison officials charged with complex duties arising from administration of the penal system.") (internal quotation marks and brackets omitted).

The governing standard in determining whether restrictions on an inmate's religious practices passes First Amendment muster is one of reasonableness. *Ford,* 352 F.3d at 588 ("the free exercise claims of prisoners are therefore judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights") (additional internal quotation marks omitted). A generally applicable policy will not be held to violate an inmate's right to free exercise of religion if the policy "is reasonably related to legitimate penological interests." *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (citation and internal quotation marks omitted).

In *Russell v. Ricks,* No. 9:02–CV–0940 (LEK/DEP), 2006 WL 1555468, at * 6, 2006 U.S. Dist. LEXIS 39772, at * 18 (N.D.N.Y. May 31, 2006), the district court noted that both district courts in the Second Circuit and New York appellate courts "have uniformly held that can tops constitute weapons." (punctuation omitted) (collecting cases); *see also Odom v. Dixion,* No. 04–CV–889F, 2008 WL 466255, at *7, 2008 U.S. Dist. LEXIS 11748, at *19–20 (W.D.N.Y. Feb.15, 2008) (accepting defendants' assertion that because can lids have sharp metal edges, they can be fashioned into weapons and rejecting plaintiff's claim that his free exercise rights were violated by permitting a non-Jew to open cans of sardines and tuna and place the contents in paper cups); *Dodge v. County of Orange,* 282 F.Supp.2d 41, 68–69 (S.D.N.Y.2003) (listing a bent can lid as a weapon); *People v. Jones,* 185 A.D.2d 470, 585 N.Y.S.2d 872, 873 (3d Dep't 1992) (testimony established that an altered can lid could be used as a weapon). In light of the general recognition that can lids can constitute weapons in the hands of inmates, the Court finds that even if Graham did direct Martin to take the sardines and tuna out of the cans, the directive was reasonably related to legitimate penological interests and, therefore, did not violate Plaintiff's rights. [16]

16    The same would be true as to Plaintiff's claims against Defendants Martin and Matasar with respect to removal of the sardines and tuna from cans.

Based upon the foregoing, I recommend that summary judgment be granted dismissing Plaintiff's First Amendment free exercise claim against Defendant Graham in his individual capacity.

### E. Plaintiff's First Amendment Free Exercise Clause Claim Against Defendants Martin and Matasar

**\*10** The free exercise claim against Defendants Martin and Matasar in Plaintiff's Complaint is limited to the alleged presence of chametz in the Seder meal served him on the first evening of Passover in 2012. (*See generally* Dkt. No. 1.) In his Complaint, Plaintiff has himself described Defendants Martin and Matasar's actions in allowing him to be served a meal that contained chametz at the first Passover Seder as a negligent violation of his constitutional rights. (Dkt. No. 1 at 11, 14– 16.) Given the evidence presented by Martin and Matasar of the established practice at Auburn of acknowledging inmates' religious dietary requirements by giving them prepackaged kosher for Passover evening meals, the record does not support a finding that the presence of chametz in Plaintiff's meal at the first Seder was the result of established prison policy or an intentional disregard of Plaintiff's right to food satisfying the dictates of his faith, as opposed to a mistake or negligence as Plaintiff has himself alleged. (Dkt. No. 1 at 11, 14–16.) Even if Martin and Matasar were negligent in failing to ensure that Plaintiff was given kosher for Passover food for the Seder, conduct "amount [ing] to [nothing] more than negligence, ... is not actionable under the First Amendment." [17] *Tafari v. Brown,* No. 9:10–CV–1065 (GTS/ DRH), 2012 WL 1098447, at *6, 2012 U.S. Dist. LEXIS 45055, at *16 (N.D.N.Y. Mar.30, 2012); *see also Gallagher v. Shelton,* 587 F.3d 1063, 1070 (10th Cir.2009) (allegations of isolated, negligent acts with respect to prisoner's receipt of a kosher diet did not state a First Amendment claim); *Lovelace v. Lee,* 472 F.3d 174, 201 (4th Cir.2006) ("[n]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause"). [18]

17    Although Matasar has acknowledged that his responsibilities as Rabbi at Auburn included visiting the kitchen at Auburn to ensure that foods provided to Jewish inmates were prepared in accordance with kashrut, there is no evidence he was personally involved in purchasing, preparing, or serving Plaintiff's meal on the first night of Passover. (Dkt. No. 18–5 at ¶ 3.) As previously noted, personal involvement is a prerequisite to an

award of damages under § 1983. *McKinnon*, 568 F.2d 934.

18   Martin and Matasar also argue that even if Plaintiff did not receive a proper kosher for Passover meal the first Seder of Passover, it was *de minimis* and cannot be found to have substantially burdened his sincerely held religious beliefs. (Dkt. No. 18–2 at 9–12.) *See Salahuddin v. Goord,* 467 F.3d at 274–75 (inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."). There is a substantial amount of case law finding that denial of a religious meal on a small number of occasions is *de minimis* and does not give rise to a First Amendment claim. *See, e.g., Wilson v. Woodbourne Correctional Facility,* No. 9:11–CV–1088 (DNH/AT), 2012 WL 1377615, at *3, 2012 U.S. Dist. LEXIS 54989, at *8 (N.D.N.Y. March 21, 2012); (the withholding of a single religious meal is at most a *de minimis* burden on a prisoner's religious expression); *Odor v. Dixon,* 2008 466255, at *11 (failure to provide inmate with kosher meals on 7 out of 33 occasions not sufficient under the First Amendment). However, in *Ford,* 352 F.3d at 594, n. 12, the Second Circuit found that the Eid ul Fitr feast was sufficiently unique in its importance within Islam to distinguish that case from those in which the inability to provide a small number of meals commensurate with an inmate's religious beliefs was a *de minimis* burden, and indicated that the court was inclined to hold that the plaintiff had established a substantial burden as a result of missing the religious feast. *See also Shakur,* 391 F.3d at 120 (reversing the district court holding that "the missing of a single Eid ul Fitr feast simply does not amount to a 'substantial burden' on his religious exercise.") A Passover Seder has been recognized as being greatly significant to Jewish adherents. *See, e.g., Whitney v. Brown,* 882 F.2d 1068, 1074 (6th Cir.1989) (explaining Seder "marks the exodus of the Jewish people from Egypt. It is a most sacred time for believers in the Jewish faith, both for historic reasons and for its celebration of family and community ....."). Therefore, if Plaintiff was intentionally denied a meal that was kosher for Passover, whether or not the denial was *de minimis* could conceivably present a question of fact.

While there is no evidence establishing more than possible negligence on the part of Defendants Martin and Matasar with regard to the allegations regarding chametz in the food served at the first Seder, Plaintiff's opposition papers include new claims of the arguably knowing violation of his First Amendment rights by Martin and Matasar during Passover of 2012. Martin, who acknowledges being responsible for overseeing and coordinating the preparation and provision of food to inmates, and Matasar, who acknowledges being responsible for checking the kitchen at Auburn to ensure that food is prepared in accordance with kashrut, have stated that during Passover, Jewish inmates at Auburn are given meals that are kosher for Passover. (Dkt. Nos. 18–5 at ¶¶ 2, 6; 18–6 at ¶ 4.) However, in his opposition papers, Plaintiff claims that the salad dressing, condiments, and butter served at the first Seder were not kosher for Passover. (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.) In addition, Plaintiff has described the CAD lunch bags given to Jewish inmates during Passover as containing chametz throughout the whole bag. (Dkt. No. 21 at ¶ 6.) Moreover, according to Plaintiff, when he complained to Matasar about the lunch bags containing chametz, Matasar told him if he wanted to eat kosher he should stay out of prison. *Id.* An intentional disregard of Plaintiff's right to a diet consistent with his sincerely held religious beliefs could constitute a violation of his First Amendment rights. *See Johnson v. Guiffere,* 2007 WL 3046703, at *4.

*11   Martin states in her Declaration that pre-packaged kosher, but not kosher for Passover, meals like the boiled seasoned beef dinner (Dkt. No. 18–7) are given to inmates on Jewish holidays other than Passover. (Dkt. No. 18–5 at ¶ 5.) However, Plaintiff claims that the boiled seasoned beef dinners were served throughout Passover, despite not being kosher for Passover. (Dkt. No. 21 at ¶ 3.) Given that the DOCCS Food Production Center receipt submitted by Martin includes the boiled beef dinners in the list of "frozen Passover dinners," it is conceivable that, whether inadvertently or intentionally, those meals were served during Passover as Plaintiff contends. (Dkt. No. 18–9.)

Plaintiff's new claims against Defendants Martin and Matasar have been asserted before discovery, at a point where it would not be prejudicial to Defendants to allow him to amend his complaint to include them. Therefore, giving due deference to Plaintiff's *pro se* status, the Court recommends that Defendants Martin and Matasar's motion for summary judgment with regard to Plaintiff's free exercise claim against them in their individual capacities be denied without prejudice, and that Plaintiff be granted leave to file an

amended complaint including the new claims asserted in his opposition papers. [19]

[19]    Had Defendants made a pre-discovery motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure rather than a summary judgment motion in lieu of an answer, Plaintiff, as a *pro se* complainant, would likely have been found entitled to an opportunity to amend his Complaint. *See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000)* (where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" unless "the problem with [the plaintiff's] causes of action is substantive" and could not be cured by a better pleading) (citation and internal quotation marks omitted).

**ACCORDINGLY,** it is hereby

**ORDERED** that Plaintiff's motion for leave to amend his Complaint to reflect the correct dates for Passover in 2012 (Dkt. No. 20) is ***GRANTED;*** and it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be *GRANTED* as to Defendant Graham; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be ***GRANTED*** in part and ***DENIED*** in part, without prejudice, as to Defendants Martin and Matasar as follows:

1. Summary judgment be ***GRANTED*** to Defendants Martin and Matasar on Plaintiff's claim under RLUIPA; and

2. Summary judgment be ***DENIED*** to Defendants Martin and Matasar, without prejudice, on Plaintiff's claim under 42 U.S.C. § 1983 for violation of his rights under the First Amendment Free Exercise Clause; and it is further

**RECOMMENDED** that Plaintiff be granted leave to amend his Complaint to assert the new claims against Defendants Martin and Matasar set forth in his papers in opposition to Defendants' motion for summary judgment (Dkt. Nos. 21 and 24); and it is further

**RECOMMENDED** that with respect to any amended complaint filed by Plaintiff, he be instructed to include factual allegations describing the role of Defendants Martin and Matasar sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and that the amended complaint be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon, or incorporate by reference, the complaint previously filed in the action; and it is hereby

**ORDERED** that in accordance with *Lebron v. Sanders, 557 F.3d 76 (2d Cir.2009)* (per curiam), the Clerks Office provide Plaintiff with copies of the following unpublished decisions: *Cole v. Artuz,* No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876 (S.D.N.Y. Oct. 28, 1999); *Witzenburg v. Jurgens,* No. CV–05–4827 (SJF) (AKT), 2009 WL 1033395 (E.D.N.Y. April 14, 2009); *Hamm v. Hatcher,* No. 05 Civ. 503(ER), 2013 WL 71770 (S.D.N.Y. Jan.7, 2013); *Robles v. Khahaifa,* No. 09CV718, 2012 WL 2401574 (W.D.N.Y. June 25, 2012); *Jones v. Fischer,* No. 9:10–cv–1331 (GLS/ATB), 2013 WL 5441353 (N.D.N.Y. Sept. 27, 2013); *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919 (N.D.N.Y. Feb.28, 2012); *Johnson v. Guiffere,* No. 9:04–CV–57, 2007 WL 3046703 (N.D.N.Y. Oct.17, 2007); *Russell v. Ricks,* No. 9:02–CV–0940 (LEK/DEP), 2006 WL 1555468 (N.D.N.Y. May 31, 2006); *Tafari v. Brown,* No. 9:10–CV–1065 (GTS/DRH), 2012 WL 1098447 (N.D.N.Y. Mar.30, 2012); *Wilson v. Woodbourne Correctional Facility,* No. 9:11–CV–1088 (DNH/ATB), 2012 WL 1377615 (N.D.N.Y. March 21, 2012).

**\*12** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

Filed Dec. 19, 2013.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1289601

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New
York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York, New
York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 **\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary judgment
and dismissing the amended complaint, and United States
Magistrate Judge James C. Francis IV having issued a report
and recommendation, dated August 20, 1999, recommending
that the motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this Court,
dated August 28, 1999, stating that plaintiff does "not contest
the dismissal of this action", it is

ORDERED that the attached report and recommendation of
United States Magistrate Judge James C. Francis IV, dated
August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary
judgment is granted, and the amended complaint is dismissed;
and it is further

ORDERED that the Clerk of the Court shall enter judgment
accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42 U.S.C.
§ 1983. Mr. Cole alleges that the defendant Richard Pflueger,
a corrections officer, violated his First Amendment rights
by refusing to allow him to attend religious services. The
defendant now moves for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the defendant's
motion be granted.

*Background*

During the relevant time period, Mr. Cole was an inmate
in the custody the New York State Department of
Correctional Services ("DOCS"), incarcerated at the Green
Haven Correctional Facility. (First Amended Complaint
("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993, the
plaintiff was in keeplock because of an altercation with prison
guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with one hour
for recreation. (Affidavit of Anthony Annucci dated Dec. 1,
1994 ¶ 5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶ 3).
Permission is granted unless prison officials determine that
the inmate's presence at the service would create a threat to
the safety of employees or other inmates. (Schneider Aff. ¶
3). The standard procedure at Green Haven is for the captain's
office to review all requests by inmates in keeplock to attend
religious services. (Schneider Aff. ¶ 3). Written approval is
provided to the inmate if authorization is granted. (Affidavit
of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.")
¶ 5). The inmate must then present the appropriate form to
the gate officer before being released to attend the services.
(Pflueger Aff. ¶ 5).

 **\*2** On June 28, 1993, the plaintiff submitted a request
to attend the Muslim services on July 2, 1993. (Request
to Attend Scheduled Religious Services by Keep–Locked
Inmate dated June 28, 1993 ("Request to Attend Services"),

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3

(S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se′*s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not

permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

[1]     In light of this finding, there is no need to consider the defendant's qualified immunity argument.

*Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

    Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.  3

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,

v.

G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)

|

Signed January 9, 2016

|

Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN, New York State Attorney General, OF COUNSEL: CHRISTOPHER J. HUMMEL, ESQ., Assistant Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

*1 This is a civil rights action brought by *pro se* plaintiff Terrell Eleby against three individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), one of whom has since been dismissed from the action, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that two of the defendants assaulted him in violation of his Eighth Amendment rights, and the third defendant violated his Fourteenth Amendment rights by issuing an allegedly false misbehavior report against him and confining him in the special housing unit ("SHU") at the prison facility in which he was housed.

Currently pending before the court is a motion brought by the remaining two defendants seeking the entry of summary judgment in their favor based upon plaintiff's alleged failure to exhaust available administrative remedies before filing suit. For the reasons set forth below, I recommend that the defendants' motion be granted.

I. BACKGROUND [1]

[1] In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff is a prison inmate currently held in the custody of the DOCCS. *See, e.g.*, Dkt. No. 29-2 at 13. Although plaintiff is now confined elsewhere, at the times relevant to this action he was housed in the Auburn Correctional Facility ("Auburn") located in Auburn, New York. *Id.* at 18.

In his complaint, plaintiff alleges that on January 14, 2015, he was waiting in one of Auburn's hospital dormitory rooms to be escorted to an outside facility for a medical examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At approximately 10:00AM, defendants Smith and Vevone, both of whom are corrections officers, arrived at plaintiff's room to escort him on the medical trip. Dkt. No. 1 at 4. While plaintiff was attempting to remove his clothes for a mandatory strip search, defendant Smith "violently and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2 at 58. According to plaintiff, both defendants Smith and Vevone "jumped on [his] back," and defendant Smith punched him repeatedly in the eye, head, neck, back, and ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five minutes Sergeant Cudla, who is not a named defendant in the action, arrived at plaintiff's dorm, physically intervened, and ordered defendants Smith and Vevone to cease the assault and leave the room. Dkt. No. 1 at 4-5; Dkt. No. 29-2 at 58-59, 64. As a result of the alleged assault, plaintiff suffered various injuries, including a bloody and swollen eye, swelling and redness to his neck, and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and Vevone issued plaintiff a misbehavior report accusing him of violating six prison rules. Dkt. No. 22 at 9; Dkt. No. 29-2 at 72. Following a superintendent's hearing to address the charges, plaintiff was found guilty on four of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at 72. As a result of that finding, plaintiff was sentenced to serve thirty days of disciplinary SHU confinement, with a corresponding loss of commissary, package, and telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at 73-72.

II. PROCEDURAL HISTORY

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 36 of 74

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

[2]     Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516,

524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, —— Fed.Appx. ——, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

[3]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

[4]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

[5]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can —and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only

Eleby v. Smith, Not Reported in Fed. Supp. (2017)
Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 38 of 74
2017 WL 986123

those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

[6]     According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

### 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to the plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January

22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

[7]     Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.*, Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

[8]     In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/ Directives/0700.pdf.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 39 of 74

2017 WL 986123

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

[9]  In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

IV. <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**Eleby v. Smith**, Not Reported in Fed. Supp. (2017)

2017 WL 986123

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[10]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 986123

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 41 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)
2017 WL 920753

KeyCite Yellow Flag - Negative Treatment

Clarified on Denial of Reconsideration by    Crichlow v. Fischer,    W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,

v.

Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW

|

Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

\*1  Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to 42 U.S.C. § 1983 in the Southern District
of New York on October 16, 2012. (Dkt. 2). Plaintiff filed
an amended complaint seeking relief against 136 Defendants
on June 17, 2013. (Dkt. 12). The action was transferred to
this Court on April 28, 2015. (Dkt. 168). The action was
then severed by this Court on February 10, 2017. (Dkt. 223).
Following severance, 35 Defendants (together "Defendants")
remain. (*See id.* at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'
motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;
Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**

Plaintiff's amended complaint spans 142 pages. (*See* Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(*See* Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (*See* Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (*id.* at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (*Id.* at 31; *see, e.g.,* Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries
hip, back, shoulder, head" for "about 68 months." (*Id.* at 3).
Plaintiff also asserts that he was subjected to a risk of disease

2017 WL 920753

due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at 35).

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review
**\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most

Case 9:20-cv-00241-LEK-TWD Document 39 Filed 01/19/21 Page 43 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into its offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

### B. Statute of Limitations
Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76,

79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation doctrine generally applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure

2017 WL 920753

to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v.*

*Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

[1]     Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to run from the

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 45 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

date that the plaintiff was denied the full and fair hearing he was entitled to." *Bunting v. Fischer,* 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez,* 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

### C. **Failure to Exhaust Administrative Remedies**

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed,* 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review

that a prisoner may seek relief in federal court under § 1983.

*Crenshaw,* 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord,* 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " *Dabney v. Pegano,* 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting *Hemphill,* 380 F.3d at 686). However, the third prong of *Hemphill,* relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake,* 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno,* 829 F.3d 118, 123 (2d Cir. 2016). The inquiry that used to be under the third prong of *Hemphill,* is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1). Plaintiff misunderstands the exhaustion requirement. The filing of a grievance is but the first step in exhausting administrative remedies. To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC. Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)). "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl,* Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 46 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

### D. **Plaintiff's Due Process Claims**

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

### 1. **SHU Confinement**

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra,* 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin,* 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

**\*7** There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz,* 380 F.3d at 654-55; *see also Tafari v. McCarthy,* 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " (quoting *Palmer,* 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt. 177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

### 2. **Grievance Processing**

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 47 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer*, 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

### E. Retaliation

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly,

> a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer,* 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim. (*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

### F. Summary

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

### III. Plaintiff's Motion for Discovery

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 48 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

*Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

## IV. **Plaintiff's Motion to Appoint Counsel**

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

 **\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper*, the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

## V. **Plaintiff's Motion for a Stay**

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

## VI. **Plaintiff's Motion for a Medical Exam**

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at \*1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 49 of 74

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care." *Rodriguez v. Conway,* No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

### VII. Plaintiff's Motion for Reconsideration

**\*10** Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau,* 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd,* 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

### VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

### IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ] understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and

26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

### X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see Ceglia v. Zuckerberg,* No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation*

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 50 of 74
Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)
2017 WL 920753

adopted by 2014 WL 1224574 (W.D.N.Y. 2014), aff'd, 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11** Defendants' motion is denied without prejudice.

## XI. Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (*See* Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions. As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 920753

End of Document    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 7021588
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Trevis L. FUNCHES, Plaintiff,
v.
Anthony RUSSO, et al., Defendants.

9:17-CV-1292 (LEK/DJS)
|
Signed 11/30/2020

**Attorneys and Law Firms**

Trevis L. Funches, Romulus, NY, pro se.

Helena Lynch, NYS Office of the Attorney General, Mineola, NY, Joshua E. McMahon, New York State Attorney General, Albany, NY, for Defendant Anthony Russo.

Helena Lynch, NYS Office of the Attorney General, Mineola, NY, for Defendants A. Polizzi, Jeremy Greene, Cheryl Morris.

A. Polizzi, pro se.

Jeremy Greene, pro se.

Cheryl Morris, pro se.

**DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

 **\*1** Pro se plaintiff Trevis Funches brought this 42 U.S.C. § 1983 action against various employees of Eastern Correctional Facility ("Eastern C.F."): Deputy Superintendent for Security Anthony Russo, Hearing Officer A. Polizzi, Correction Officer Jeremy Greene, and Deputy Superintendent of Programs Cheryl Morris, among other defendants who have been terminated from this action. See Docket. Plaintiff alleges violations of his constitutional rights while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS") at Eastern C.F. See Dkt. No. 10 ("Amended Complaint").

After the parties filed cross-motions for summary judgment, the Hon. Daniel J. Stewart, United States Magistrate Judge,

recommended that Plaintiff's motion be denied and that Defendants' motion be granted in part and denied in part. See Dkt. No. 92 ("Report-Recommendation"). Before the Court are objections filed by Plaintiff and Russo. See Dkt. Nos. 94 ("Plaintiff's Objections"), 95 ("Russo Objections").

For the reasons discussed below, the Court adopts the Report-Recommendation in its entirety.

**II. BACKGROUND**

**A. Factual History**
The Court detailed Plaintiff's factual allegations in its February 15, 2018 Memorandum-Decision and Order. See Dkt. No. 7. For convenience, the Court briefly summarizes the facts relevant to the objections.

Sometime in 2015, Russo was tasked with investigating a grievance filed by Plaintiff regarding allegedly stolen property. See Dkt. No. 1 ("Complaint") at 25–26. Russo allegedly demanded Plaintiff explain why Russo had "ten ... pages of write-up on [his] desk" and ordered non-party Officer Menard to search Plaintiff's cell and "take his Hot Pot." Id. at 26.

In early 2017, Morris denied Plaintiff the ability to correspond with his son because Plaintiff had not provided verification of the relationship. See id. at 21–22, 24.

On June 30, 2017, Plaintiff was involved in a fight with another inmate and received a misbehavior report. See id. at 15. Polizzi presided over the disciplinary hearing based on the misbehavior report. Id. at 16. Plaintiff objected to the failure of Greene, his assigned assistant for the hearing, to provide him with the altercation-related reports and medical records. See id. Over Plaintiff's objection, the reports were read into the record. See id. at 17. Polizzi found Plaintiff guilty and sentenced him to 120 days of SHU confinement. See id.

**B. Procedural History**
On June 7, 2018, this Court determined the following claims survived sua sponte review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and could proceed: (1) Plaintiff's Fourteenth Amendment due process claims against Polizzi and Greene arising out of Plaintiff's July 2017 disciplinary hearing; (2) Plaintiff's First Amendment retaliation claim against Russo arising out of a 2015 grievance; and (3) Plaintiff's First Amendment retaliation claims against Morris and Jeff

McKoy arising out of Morris' revocation of Plaintiff's family correspondence privileges. See Dkt. No. 19 (the "June 2018 Order").

**\*2** The remaining defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on August 13, 2018. See Dkt. No. 30. This Court dismissed Plaintiff's claim against McKoy on qualified immunity grounds but denied the motion to dismiss with respect to the other claims. See Dkt. No. 43 (the "December 2018 Order").

On March 8, 2019, Plaintiff moved for summary judgment. See Dkt. No. 55 ("Plaintiff's Motion"). Defendants responded by opposing Plaintiff's Motion and cross-moving for summary judgment on December 9, 2019. See Dkt. No. 81 ("Defendants' Opposition and Cross-Motion"). Plaintiff filed a response in opposition on January 2, 2020, see Dkt. No. 87 ("Plaintiff's Response"), to which Defendants filed a reply, see Dkt. No. 88 ("Defendants' Reply").

### C. The Report-Recommendation

Because Plaintiff failed to submit any evidence in support of his summary judgment motion besides an affidavit in which he argued his allegations were valid, Judge Stewart recommended denying Plaintiff's Motion. See Report-Recommendation at 4–5. With respect to this portion of the Report-Recommendation, to which no party has objected, the Court finds no clear error.

Turning to Defendants' cross-motion, Judge Stewart first addressed Plaintiff's failure to respond to Defendants' statement of material facts. Because Plaintiff is pro se, Judge Stewart excused his failure to comply with the local rules and conducted a review of the entire record to discover the undisputed facts. See id. at 6.

Judge Stewart next turned to Plaintiff's claim against Russo, which is based on alleged retaliation for Plaintiff's filing of a grievance that Russo was tasked with investigating. See id. Judge Stewart recommended that Plaintiff's claim against Russo should survive summary judgment because Russo had not met his burden of showing Plaintiff failed to exhaust his administrative remedies under the Inmate Grievance Program ("IGP"). See id. at 8, 10.

But Judge Stewart recommended that the other defendants be granted summary judgment. On Plaintiff's Fourteenth Amendment due process claim against Greene, Judge Stewart recommended dismissal because Plaintiff failed to show Greene inadequately assisted him in preparing for a disciplinary hearing. See id. at 14. On Plaintiff's Fourteenth Amendment due process claim against Polizzi, Judge Stewart recommended dismissal both because Plaintiff failed to show he was prejudiced by not being given the chance to review certain documents and because Polizzi satisfied the "some evidence" standard in finding Plaintiff guilty at the disciplinary hearing. See id. at 16. On Plaintiff's First Amendment claim against Morris, Judge Stewart recommended dismissal because Morris "demonstrated that she would have taken the same action in the absence of a retaliatory motive." Id. at 19.

### D. Plaintiff's Objection

Plaintiff objected to Judge Stewart's recommendation that Polizzi's summary judgment motion be granted. See generally Pl.'s Obj. Specifically, Plaintiff argues that he was prejudiced by Polizzi's failure to allow him to review certain documents in connection with the disciplinary hearing. See id. at 2. Plaintiff also argues that Morris' denial of his correspondence privileges was "perverse." Pl.'s Obj. at 2.

### E. Russo Objections

On September 29, 2019, Defendants filed an objection to the portion of the Report-Recommendation that recommended denying Russo's motion for summary judgment. See Russo Objs. Defendants argue that Judge Stewart erred in concluding that Russo had not met his burden to show Plaintiff failed to exhaust his administrative remedies. Id. at 3. According to Defendants, Plaintiff could not have exhausted through a September 2015 grievance because that grievance mentions items stolen during a cell transfer, while Plaintiff's claim against Russo is based on an allegedly retaliatory cell search. Id. at 3–4; see Dkt. No. 81-13 (the "September 2015 Grievance").

### III. STANDARD OF REVIEW

**\*3** Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); see also L.R. 72.1(c). A court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate

judge, a district court need review that aspect of a report-recommendation only for clear error. See Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1, 2013 U.S. Dist. LEXIS 37070, at *4 (N.D.N.Y. Mar. 18, 2013); see also Demuth v. Cutting, No. 18-CV-789, 2020 WL 950229, at *1, 2020 U.S. Dist. LEXIS 34037, at *3 (N.D.N.Y. Feb. 27, 2020) (Kahn, J.). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

## IV. DISCUSSION

### A. Plaintiff's Objections

#### 1. Denial of Plaintiff's Summary Judgment Motion

Plaintiff does not appear to object to Judge Stewart's recommendation that Plaintiff's summary judgment motion be denied. See Pl.'s Objs. at 1 (Plaintiff "files this Opposition to the Defendants' grant of Summary Judgment[.]"). Therefore, the Court reviews the recommendation that Plaintiff's summary judgment motion be denied only for clear error and finds none. See Barnes, 2013 WL 1121353, at *1, 2013 U.S. Dist. LEXIS 37070, at *4. Accordingly, the Court adopts the portion of the Report-Recommendation recommending denial of Plaintiff's summary judgment motion.

#### 2. Grant of Summary Judgment to Morris, Greene, and Polizzi

Plaintiff objects primarily to Judge Stewart's recommendation that Polizzi be granted summary judgment on Plaintiff's due process claim against him. See generally Pl.'s Objs. Specifically, Plaintiff argues that, contrary to Judge Stewart's finding, he was prejudiced in not receiving certain documents in connection with the 2017 disciplinary hearing. However, Plaintiff does not say how he was prejudiced or indicate in any way that the outcome of the hearing would have been different had he been given the opportunity to review the documents. Because this is a conclusory objection, the Court reviews the recommendation that Polizzi be granted summary judgment only for clear error and finds none. See Barnes, 2013 WL 1121353, at *1, 2013 U.S. Dist. LEXIS 37070, at *4.

Plaintiff's also alludes to the recommendation that Morris be granted summary judgment, calling Morris' alleged denial

of Plaintiff's correspondence rights "perverse." See Pl.'s Obj. at 2. Facing a general objection such as this one, the Court reviews the Report-Recommendation only for clear error and finds none. See id. at *4.

### B. Russo Objections

The Court need not determine what standard of review applies to the portion of the Report-Recommendation to which Russo objects because his objection fails even de novo review. See Moss v. Colvin, 845 F.3d 516, 519 n.2 (2d Cir. 2017) ("We need not resolve which standard of review applies to this objection, however, because we conclude that Moss's argument does not prevail even under de novo review.").

The exhaustion requirement of the Prison Litigation Reform Act ("PLRA") gives "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). "Consistent with this purpose, a prisoner must allege facts sufficient to alert corrections officers 'to the nature of the claim,' and 'provide enough information about the conduct' at issue 'to allow prison officials to take appropriate responsive measures." Singh v. Lynch, 460 Fed. App'x 45, 46–47 (2d Cir. 2012) (summary order) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d. Cir. 2004)). "The burden is not a heavy one; it can be analogized to notice pleading." Id. (citing Johnson, 380 F.3d at 697). "All the grievance need do is object intelligibly to some asserted shortcoming." Johnson, 380 F.3d at 697 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). "Because failure to exhaust is an affirmative defense," the defendant "bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements." Jenkins v. Short, No. 19-CV-1352, 2020 U.S. Dist. LEXIS 215913 at *12 (N.D.N.Y. Nov. 16, 2020).

**\*4** The thrust of the Russo Objections is that Judge Stewart erroneously concluded that the September 2015 Grievance could have related to Plaintiff's retaliation claim against Russo. See generally Russo Objs. However, the September 2015 Grievance appears to be based on the same facts as Plaintiff's claim against Russo. Compare September 2015 Grievance at 3 ("DSS Russo demanded subordinates to take Hot Pot.") with Am. Compl. at 6 ("Russo then turn[ed] to non-party Officer Menard and ordered him to have [Plaintiff's] cell searched and [to] 'take his Hot Pot[.]' "). The September 2015 Grievance, then, was sufficient to "alert corrections officers 'to the nature of the claim,' " against Russo. Singh, 460 Fed. App'x at 47 (quoting Johnson, 380 F.3d at 697). Therefore,

the Court adopts the portion of the Report-Recommendation finding that Russo failed to meet his burden to show Plaintiff's claim against him is unexhausted.

**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED,** that the Report-Recommendation (Dkt. No. 92) is **APPROVED and ADOPTED** in its entirety; and it is further

**ORDERED,** that Plaintiff's motion for summary judgment (Dkt. No. 55) is **DENIED**; and it is further

**ORDERED,** that Defendants' motion for summary judgment (Dkt. No. 81) is **GRANTED in part** and **DENIED in part**. The motion is granted to the extent it requests summary judgment on behalf of Defendants Polizzi, Greene, and Morris and denied to the extent it requests summary judgment on behalf of Defendant Russo; and it is further

**ORDERED,** that Defendants Polizzi, Greene, and Morris are **TERMINATED** from this action; and it is further

**ORDERED,** that the Clerk is directed to serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.** [1]

[1]     Due to the delays and disruptions caused by the COVID-19 pandemic, some cases/motions were not disposed of prior to the end of the reporting period.

**All Citations**

Slip Copy, 2020 WL 7021588

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

2019 WL 1387460
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Arrello BARNES, Plaintiff,

v.

Anthony ANNUCCI, et al.,[1] Defendants.

[1]     Defendants' filings indicate that the correct
spelling of defendant Ollies is Anthony Olles,
the defendant sued as J. Whitford is John
Whiteford, and Donald Venetozzi is Donald
Venettozzi. *See* Dkt Nos. 97-7, 97-10, 97-12.
Accordingly, the clerk of the court will
respectfully be directed to modify the court's
records to reflect the proper spellings of the
names of these three defendants.

Civil Action No. 9:15-CV-0777 (GLS/DEP)
|
Signed 03/12/2019

**Attorneys and Law Firms**

ARRELLO BARNES, Pro Se, 00-A-0597, Elmira
Correctional Facility, P.O. Box 500, Elmira, NY 14902.

FOR DEFENDANTS: HON. LETITIA JAMES, New York
State Attorney General, OF COUNSEL: COLLEEN D.
GALLIGAN, ESQ., Assistant Attorney General, The Capitol,
Albany, NY 12224.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by plaintiff Arrello
Barnes, who is proceeding *pro se* and *in forma pauperis*
("IFP"), pursuant to 42 U.S.C. § 1983, against several
individuals employed by the New York State Department
of Corrections and Community Supervision ("DOCCS").
Plaintiff alleges that his First and Fourteenth Amendments
rights were violated in connection with a series of incidents
that resulted in disciplinary proceedings being brought
against him while he was incarcerated at four different
correctional facilities operated by the DOCCS.

Currently pending before the court are cross motions brought
by the parties, both seeking the entry of summary judgment
in their favor. For the reasons set forth below, I recommend
that plaintiff's cross motion be denied, defendants' motion be
granted, and plaintiff's second amended complaint ("SAC")
be dismissed in its entirety.

I. BACKGROUND[2]

[2]     In light of the procedural posture of the case, the
following recitation is derived from the record now
before the court, with all inferences drawn and
ambiguities resolved in the non-movant's favor. *See
Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).
Because the parties have filed cross motions for
summary judgment, the court draws "all factual
inferences ... 'against the party whose motion is
under consideration.' " *Tindall v. Poultney High
Sch. Dist.*, 414 F.3d 281, 283-84 (2d Cir. 2005)
(quoting *Boy Scouts of Am. v. Wyman*, 335 F.3d
80, 88 (2d Cir. 2003) ) (internal quotation marks
omitted).

Plaintiff is a New York State prison inmate currently being
held in the custody of the DOCCS. *See generally* Dkt. No.
72; *see also* Dkt. No. 97-4 at 6. Although he is presently
confined in the Elmira Correctional Facility ("Elmira"),
the events giving rise to this suit transpired at various
points between 2011 and 2015, while plaintiff was held in
the Sullivan Correctional Facility ("Sullivan"), the Attica
Correctional Facility ("Attica"), the Clinton Correctional
Facility ("Clinton"), and the Great Meadow Correctional
Facility ("Great Meadow"). *See generally* Dkt. No. 72. Each
of the discrete incidents that give rise to this suit is more fully
described below.

A. The 2011 Assault and the 2012 Tier III Disciplinary
Hearing
On August 8, 2011, plaintiff's fellow inmate at Sullivan,
George Mims, was assaulted with a razor while he was
exercising in the West Yard of that facility. Dkt. No. 97-3 at
65; Dkt. No. 97-4 at 15. As a result of the incident, plaintiff
was issued an inmate misbehavior report ("MBR") on August
10, 2011 charging him with violating certain inmate behavior
rules. Dkt. No. 97-3 at 52; Dkt. No. 102-5 at 3; *see generally*
7 N.Y.C.R.R. § 270.2. Plaintiff has denied any role in the
assault, asserting that he was working in a different area of
the facility at the time the assault occurred. Dkt. No. 97-3 at
234 ("[W]hen this took place[,] I was at work").

Plaintiff was initially found guilty following a disciplinary hearing held on October 25, 2011 at Sullivan. Dkt. No. 97-3 at 58. That determination was ultimately revisited as a result of a court challenge, and a new hearing was ordered to address the charges associated with the stabbing of inmate Mims. Dkt. No. 97-3 at 58-59.

**\*2** Following the administrative expungement, a second hearing was conducted by defendant Raymond Coveny, a corrections captain, in August and September of 2012, while plaintiff was confined to Attica. Dkt. No. 97-3 at 231-92; Dkt. No. 97-9. In his SAC and his cross motion for summary judgment, plaintiff alleges that although he requested that Officer Connors, Officer Zarrias, and inmate Mims be called as witnesses at the second hearing, defendant Coveny denied each of those requests. Dkt. No. 72 at 9; Dkt No. 102-1 at 1; Dkt. No. 102-3 at 1. According to plaintiff,

> [defendant] Coveny told me 'I will not call officers to testify so they can contradict other officers' after [I] requested two [corrections officers] witnesses. He also refused George Mims to be a witness. [3]

Dkt. No. 102-1 at 1; *but see* Dkt. No. Dkt. No. 97-3 at 280, Dkt. No. 102-5 at 4.

[3]  Plaintiff appears to be referring to following statement made by defendant Coveny during the course of the second hearing:

> [O]kay, I am not missing your point and the point was made and I understand[.] [H]owever[,] I reviewed the video with the assistance [of] Lieutenant Maxwell and I am of the opinion that the person I saw in the video is you[.] Lieutenant Maxwell has testified that the person in the video is you[.] ... [S]o to have a staff member come and state that you[ ] weren't in the yard [when] I already have a staff member that [says] that you were[,] and I personally as the hearing officer have viewed the video and I am convinced that it is you that is in the video.... [they're] going to be denied [as] witnesses.

Dkt. No. 97-3 at 280; Dkt. No. 102-5 at 4.

The documentary evidence adduced by the parties reflects that although inmate Mims provided testimony at plaintiff's original disciplinary hearing, *see* Dkt. No. 97-4 at 23, he refused to testify at the second hearing. Dkt. No. 97-3 at 69. When inmate Mims was asked to specify why he refused to

testify, he stated, "[b]ecause I am not doing it." Id.; Dkt. No. 97-3 at 240-41; *see also* Dkt. No. 102-5 at 5. With respect to Officer Connors, when he was contacted, he indicated that he was not working on the date of the assault, and as a result, defendant Coveny denied plaintiff's request for his testimony as irrelevant. Dkt. No. 97-3 at 279; *see also* Dkt. No. 97-3 at 61. Despite plaintiff's allegation to the contrary, there is no indication in the record that plaintiff sought the testimony of Officer Zarrias at the second hearing. [4] *See generally* Dkt. No. 97-3 at 231-92.

[4]  It appears that plaintiff may be conflating the witness requests made in connection with his initial disciplinary hearing with the witness requests made in connection with his second hearing. *See* Dkt. No. 97-4 at 17.

On September 6, 2012, defendant Coveny dismissed one charge, but found plaintiff guilty of all remaining charges. Dkt. No. 97-3 at 49-50, 290-91. As a result, plaintiff was sentenced to two years of disciplinary special housing unit ("SHU") confinement, coupled with the corresponding loss of certain privileges. Dkt. No. 97-3 at 49.

### B. The 2013 "Return to Sender" Letter and the Tier III Disciplinary Hearing

On January 24, 2013, a letter written by plaintiff to a female friend was returned to the mailroom at Attica, with the envelope having been marked "return to sender." Dkt. No. 97-7 at 2; *see also* Dkt. No. 97-3 at 101. Because "return to sender" mail is frequently used by gang members as a method to communicate within the facility and circumvent scrutiny, the letter was confiscated by prison personnel, who then asked defendant Anthony Olles, a corrections officer and member of the Crisis Intervention Unit ("CIU") at Attica, to review the correspondence to determine whether it contained prohibited gang material. Dkt. No. 97-7 at 1-3. Based upon his training and experience, defendant Olles determined that the "return to sender" letter contained gang codes associated with the Hunta Bloods, a subset of the larger Bloods gang, and issued plaintiff an MBR charging him with violating Rule 105.13. [5] Dkt. No. 97-3 at 100-08; Dkt. No. 97-7 at 3.

[5]  Rule 105.13 is part of Rule Series 105, which addresses an inmate's "Unauthorized Assembly or Activity." 7 N.Y.C.R.R. § 270.2(B)(6). Rule 105.13 provides that "[a]n inmate shall not engage in or encourage others to engage in gang activities or

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 57 of 74

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 1387460

meetings, or display, wear, possess, distribute or use gang insignia or materials including, but not limited to, printed or handwritten gang or gang related material." 7 N.Y.C.R.R. § 270.2(B)(6).

**\*3** On January 29 and 30, 2013, a Tier III disciplinary hearing was held before defendant John Whiteford, a senior corrections counselor at Attica.[6] Dkt. No. 97-3 at 293-303; Dkt. No. 97-10 at 1-2. During the hearing, plaintiff requested the testimony of Officer Eric Kentzel,[7] whom plaintiff indicated would testify that plaintiff "did[ not] write that letter" and that "another inmate ... [was] throwing [plaintiff's] name" on correspondence. Dkt. No. 97-3 at 295-99, 301-02; Dkt No. 97-4 at 39, 44-45; Dkt. No. 97-10 at 2. Defendant Whiteford denied plaintiff's request, however, because there was no indication that Officer Kentzel had knowledge or information regarding the specific letter that led to the issuance of the MBR. Dkt. No. 97-4 at 46 ("Irrelevancy, I believe."); Dkt. No. 97-10 at 2-3; Dkt. No. 102-1 at 1; Dkt. No. 102-3 at 1; *see also* Dkt. No. 72 at 10.

[6] Plaintiff continues to assert in his cross-motion that defendant Whiteford violated his procedural due process rights because he was biased during the hearing. However, that claim was previously dismissed by the court, and it was not re-asserted in plaintiff's SAC. Dkt. No. 70 at 33 ("[D]efendant [Whiteford's] statement did nothing more than advise plaintiff that, if evidence was presented on the record that plaintiff violated rule 105.13, he would be found guilty."); *see also* Dkt. Nos. 72, 75.

[7] The precise spelling of this officer's name is not clear from the record before the court. *See, e.g.*, Dkt. No. 97-1 at 4 ("Kenzel" and "Kinzel"); Dkt. No. 97-4 at 39 ("Kintzel"); Dkt. No. 97-10 at 2("Kentzel").

At the conclusion of the hearing, defendant Whiteford found plaintiff guilty as charged, and plaintiff was sentenced to one year of disciplinary SHU confinement, coupled with the loss of certain privileges. Dkt. No. 97-3 at 86; *see also* Dkt. No. 97-3 at 299-304.

### C. The 2015 Conspiracy, Gang Material, Grievance, and the Tier III Disciplinary Hearing

On January 29, 2015, members of the CIU at Clinton received confidential information that inmate gang members, including plaintiff, were conspiring to assault security staff

at the facility. Dkt. No. 97-8 at 1-2. As a result of an investigation into the matter, Corrections Officer J. Hanson ("C.O. Hanson") issued plaintiff an MBR charging him with violating multiple inmate behavior rules including, *inter alia*, gang activity and threats on staff. Dkt. No. 97-3 at 116; *see generally* 7 N.Y.C.R.R. § 270.2.

After plaintiff was removed from his cell, defendant Richard J. Mahuta, a corrections officer assigned to the CIU, and another officer conducted a cell search. Dkt. No. 97-3 at 117; Dkt. No. 97-8 at 1-2. In his SAC, plaintiff accused defendant Mahuta of confiscating and discarding three of his religious head coverings. Dkt. No. 72 at 11-12. According to defendant Mahuta, during the course of that cell search, he did not remove or throw away any religious head coverings from plaintiff's cell. Dkt. No. 97-8 at 3. Plaintiff counters by alleging that two other inmates overheard defendant Mahuta state, "[i]sn't [plaintiff] a Blood? What is he doing with kufis?" prior to disposing of those head coverings.[8] Dkt. No. 72 at 12; Dkt. No. 97-4 at 56-57; *compare* Dkt. No. 97-8 at 3 *with* Dkt. No. 102-1 at 2; Dkt. No. 102-5 at 24-25.

[8] A "kufi" is headgear that is associated with the Muslim religion. *Nicholas v. Tucker*, 89 F. Supp. 2d 475, 477 (S.D.N.Y. 2000).

However, during the cell search, defendant Mahuta discovered three handwritten pages of material that he believed to be prohibited gang material. Dkt. No. 97-8 at 3. Those three pages, along with three Bibles and other materials, were confiscated by defendant Mahuta, who had the materials placed inside a contraband locker for further review at a later time. Dkt. No. 97-8 at 3; Dkt. No. 97-3 at 413-14. Defendant Mahuta ultimately determined that only the three handwritten pages constituted prohibited gang material and issued plaintiff am MBR charging him with possession of that material. Dkt. No. 97-3 at 117.

### 1. Plaintiff's Tier III Disciplinary Hearing and Appeals

**\*4** Between February 5, 2015 and February 27, 2015, defendant Kenneth McKeighan, an industrial superintendent at Great Meadow, conducted a Tier III disciplinary hearing with respect to the two MBRs. Dkt. No. 97-5; Dkt. No. 97-6; *see also* Dkt. No. 97-3 at 116-117. At the hearing, plaintiff requested, *inter alia*, the testimony of his brother, Exondus Barnes who, plaintiff asserted, would testify that he was the author of the three handwritten pages of material confiscated

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 58 of 74

2019 WL 1387460

during the cell search. Dkt. No. 97-5 at 5; Dkt. No. 97-6 at 8, 17-18; *see also* Dkt. No. 97-3 at 115. Defendant McKeighan denied the request as irrelevant, however, because plaintiff was charged with possession of the materials, and thus the question of authorship was not relevant.[9] Dkt. No. 97-3 at 119; Dkt. No. 97-4 at 66-68; Dkt. No. 97-6 at 33-34; Dkt. No. 97-11 at 3.

[9]    Specifically, defendant Mahuta charged plaintiff with violating Rule 105.13 of the standards of inmate behavior. *See* footnote 5, *supra*; *see also* 7 N.Y.C.R.R. § 270.2(B)(6).

At the hearing, plaintiff also requested copies of the "call outs" or "yard go-arounds" for Clinton, contesting that those materials would demonstrate that he was not in the yard with his co-conspirators during the relevant times. Dkt. No. 97-5 at 5-6. Although defendant McKeighan initially reserved decision regarding plaintiff's request, he ultimately denied it after C.O. Hanson testified that no such document existed at Clinton. Dkt. No 97-6 at 4. Nonetheless, defendant McKeighan obtained "program sheets" for the relevant time, Dkt. No. 97-5 at 126-154, and compiled that information into a spreadsheet, which showed that plaintiff and his co-conspirators were in fact together on the evening of January 19, 2015.[10] Dkt. No. 97-5 at 218; *see also* Dkt. No. 97-6 at 18-19.

[10]    January 19, 2015 is a significant date because it is the day after prison officials at Clinton used force against a suspected Bloods gang member. Dkt. No. 97-8 at 2; Dkt. No. 97-11 at 2. Defendants theorize that plaintiff and fellow inmates attempted to plan the assaults on prison staff in retaliation for the use of force. Dkt. No. 97-5 at 36; Dkt. No. 97-11 at 2, 4.

Plaintiff also requested that video footage from Clinton's North Yard be provided at the hearing, arguing that it would show that he was not in the area during the relevant time, thereby undercutting the claims made by the confidential informant. *See, e.g.*, Dkt. No. 97-5 at 6, 11. Defendant McKeighan's denial of that request was two-fold. First, he noted that the video footage simply did not exist inasmuch as by the time the conspiracy had been uncovered, the video footage had been recorded over. Dkt. No. 97-3 at 397; Dkt. No. 97-5 at 6; Dkt. No. 97-6 at 3. Second, he noted that even if footage of the North Yard existed, that footage would have shown only a general view of the North Yard instead of focusing on any particular group of people, and he believed

the footage likely would have been "inconclusive." Dkt. No. 97-3 at 397; Dkt. No. 97-6 at 3, 10, 12.

At the conclusion of the hearing, defendant McKeighan found plaintiff guilty as charged. Dkt. No. 97-3 at 110-115. Plaintiff was sentenced to 910 days of disciplinary SHU confinement, coupled with the loss of certain privileges. Dkt. No. 97-3 at 110; *see also id.* at 114 ("Due to the nature of the entire incident and the fact your actions would have resulted in the injury to the staff and would have likely disrupted the entire facility and DOCCS in general, I have exceeded the recommended confinement guidelines considerably.").

Following the conclusion of the hearing, plaintiff filed a series of appeals challenging defendant McKeighan's determination. Dkt. No. 97-3 at 340-99; *see also* Dkt. No. 97-12 at 3. On May 12, 2015, defendant Donald Venettozzi, the Director for the DOCCS Special Housing/ Inmate Disciplinary Program, affirmed the finding of guilt, but reduced plaintiff's penalty from 910 days to twelve months of disciplinary SHU confinement. Dkt. No. 97-3 at 341-42; Dkt. No. 97-12 at 4.

**\*5**  In addition to addressing one of his appeals to defendant Anthony Annucci, the Acting Commissioner of the DOCCS, *see* Dkt. No. 97-3 at 344, plaintiff also sent defendant Annucci a letter on April 1, 2015, complaining that his due process rights were violated at the hearing. Dkt. No. 97-3 at 348-49; Dkt. No. 97-13 at 2; *see also* Dkt. No. 102-1 at 2. Defendant Annucci did not respond to plaintiff's appeal or letter or undertake any investigation as a result of plaintiff's correspondence. Dkt. No. 97-13 at 2.

## 2. Plaintiff's Grievance

On February 20, 2015, plaintiff filed a grievance in connection with defendant Mahuta's cell search, stating

On 1/29/15, my cell [was] searched by [defendant] Mahuta at [Clinton] ..., and my letters, Bible, etc. were confiscated for review. After the paper [was] review[ed], I received a misbehavior report for only [three] papers. [T]he Bible, address book, etc., were [not deemed] gang material.

I did not receive[ ] my documents [back] as of yet.

Action requested: for my papers, bible, etc. to be return[ed] to me.

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

Case 9:20-cv-00241-LEK-TWD    Document 39    Filed 01/19/21    Page 59 of 74

2019 WL 1387460

Dkt. No. 97-3 at 403 (errors in original); *see also* Dkt. No. 97-4 at 75. It appears that prison personnel were initially confused with respect to the nature of the relief plaintiff sought, as well as the location of plaintiff's property, because in initially denying plaintiff's grievance, the superintendent stated that "[t]he items in question were deemed to be contraband and as such were properly disposed of." Dkt. No. 97-3 at 404, 442. In his appeal of the grievance determination to the DOCCS Central Office Review Committee ("CORC"), plaintiff explained that he was seeking the return of only those materials that were determined not to constitute gang-related contraband. Dkt. No. 97-3 at 404-05. While plaintiff's appeal was pending before the CORC, the materials that he sought were returned to him, *see* Dkt. No. 97-3 at 400, 413, 418, 442, although plaintiff has denied ever having received those materials back from prison officials. Dkt. No. 97-4 at 77.

II. PROCEDURAL HISTORY

Plaintiff commenced this action on or about June 25, 2015, by the filing of a complaint accompanied by an application for leave to proceed IFP and a motion for a preliminary injunction. Dkt. Nos. 1, 2, 4. Although plaintiff's original IFP application was denied by the court as incomplete, his subsequent motion for leave to proceed without prepayment of fees was granted. Dkt. Nos. 5, 6, 10.

By decision and order dated September 17, 2015, Senior District Judge Gary L. Sharpe denied plaintiff's motion for preliminary injunctive relief. Dkt. No. 10. In addition, he reviewed plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A and dismissed a number of claims and defendants from the action. *See generally id.*

On October 26, 2015, and prior to service upon defendants, plaintiff filed an amended complaint ("FAC"), which was accepted by Judge Sharpe because it was deemed "a pleading which reflects the [c]ourt's rulings in the [initial] order." Dkt. No. 17. In response to plaintiff's FAC, defendants filed a motion on September 21, 2016, seeking its dismissal for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 30.

On July 14, 2017, I issued a report, which recommended the dismissal of various claims and several defendants from the action. *See generally* Dkt. No. 70. In addition, in light of my recommendation that multiple claims and defendants be dismissed from the action, I further recommended that

plaintiff be afforded an opportunity to file a SAC. *Id.* at 41. Although neither party filed any objections to my report, before Judge Sharpe had an opportunity to review it, plaintiff availed himself of my recommendation and filed his SAC on July 24, 2017. Dkt. No. 72. On September 1, 2017, Judge Sharpe issued an order adopting my report and recommendation in its entirety. Dkt. No. 75.

**\*6** Plaintiff's SAC was referred to me for review to determine whether the deficiencies that were discerned in my July 14, 2017 report and recommendation had been cured by the filing of plaintiff's SAC. Dkt. No. 76. Following my review, I issued a report and recommendation on September 22, 2017, recommending that plaintiff's SAC be accepted for filing, but that various of plaintiff's claims be dismissed. Dkt. No. 76. By decision and order dated October 19, 2017, Judge Sharpe adopted my report and recommendation in its entirety over plaintiff's objections. Dkt. Nos. 77, 78. As a result of these rulings, the following four claims survived and proceeded to discovery: (1) Fourteenth Amendment procedural due process claim against defendants Coveny, Whiteford, and McKeighan; (2) First Amendment free speech claim against defendants Olles and Mahuta; (3) First Amendment free exercise claim against Mahuta; and (4) Fourteenth Amendment procedural due process claim against defendants Annucci and Venettozzi in their supervisory capacities. *See id.* at 3.

On January 23, 2018, following the close of discovery, defendants filed a motion for summary judgment, seeking dismissal of plaintiff's claims on various grounds, both procedural and on the merits. Dkt. No. 97. Plaintiff has opposed defendants' motion and cross moved for summary judgment in his favor. Dkt. No. 102. Defendants have submitted papers in opposition to plaintiff's motion and in further support of their motion. Dkt. No. 103. The parties' motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III. DISCUSSION

A. Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides that the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material

Case 9:20-cv-00241-LEK-TWD Document 39 Filed 01/19/21 Page 60 of 74

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 1387460

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

## B. Plaintiff's Failure to Exhaust Administrative Remedies [11]

[11] As will be seen, because I recommend that each of plaintiff's claims be dismissed, have elected not to address defendants' alternative argument that they are shielded by the doctrine of qualified immunity. Dkt. No. 97-4 at 31-33.

**\*7** Defendants contend that plaintiff failed to fully exhaust his administrative remedies with respect to his First Amendment free speech claim against defendants Olles and Mahuta and his First Amendment free exercise claim against Mahuta. Dkt. No. 97-14 at 12-15. As a result of plaintiff's failure, defendants argue, those claims must be dismissed. *Id.*; *see also* Dkt. No. 103 at 4-5. In his cross motion, plaintiff does

not acknowledge defendants' argument, instead focusing his opposition on the underlying merits of the First Amendment claims defendants Olles and Mahuta. *See generally* Dkt. No. 102.

### 1. Generally

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). [12]

[12] While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted) ).

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints

2019 WL 1387460

regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [13] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

[13]   The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

**\*8** A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [14] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

[14]   Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(f). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted) ).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availab[ility] of administrative remedies." (alteration in original) (internal quotation marks omitted) ). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001) ) (internal quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [15] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 62 of 74

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 1387460

15   According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

### 2. Analysis

**\*9**  During his deposition, plaintiff testified that he had filed "a lot" of grievances during his time in DOCCS custody. Dkt. No. 97-4 at 71-72; *see* Dkt. No. 97-3 at 28-44. Although he did not believe that the number of grievances that he had filed reached the "triple digits," he speculated that it was approaching fifty to sixty grievances. Dkt. No. 97-4 at 72. Plaintiff expressed a general understanding that the use of the inmate grievance process was necessary to effectively "exhaust [his] remedies." Dkt. No. 97-4 at 78.

During his deposition, plaintiff was asked whether he had filed a grievance regarding the allegation that defendant Olles violated plaintiff's First Amendment right to free speech by his unjustified confiscation of plaintiff's "return to sender" letter in January of 2013. *See* Dkt. No. 72 at 9; Dkt. No. 97-4 at 72-73. In response, plaintiff indicated that he was unable to specifically recall whether he had, but that he did not "see why [he] would" have filed one. Dkt. No. 97-4 at 72-74. Because plaintiff effectively concedes that he did not file a grievance with respect to this incident, I can easily conclude that he failed to exhaust his administrative remedies prior to commencement.

With respect to plaintiff's free exercise and free speech claims against defendant Mahuta, both of which arise out of the January 29, 2015 search of plaintiff's cell, plaintiff acknowledged that he filed only one grievance arising out of that incident on February 20, 2015 (GM 59,129-15). Dkt. No. 97-3 at 403; Dkt. No. 97-4 at 75-76. According to that grievance,

On 1/29/15, my cell [was] searched by [defendant] Mahuta at [Clinton] ..., and my letters, Bible, etc. were confiscated for review. After the paper [was] review[ed], I received a misbehavior report for only [three] papers. [T]he Bible, address book, etc., were [not deemed] gang material.

I did not receive[ ] my documents [back] as of yet.

Action requested: for my papers, bible, etc. to be return[ed] to me.

Dkt. No. 97-3 at 403 (errors in original). When prison officials appeared to initially misapprehend which materials he sought to have returned, in an appeal to the CORC on August 24, 2015, plaintiff stated:

If you review the 1/29/15 [inmate misbehavior report], only 3 pages were confiscated, which was the only material I was found guilty on. The contraband list which stated my Bible, letters, phone book, etc. were being review which Dep. Brendel could verify. The review[ed] material was never charged on the misbehavior report.... [T]he I.G.R.C. staffs are merely covering up the fact that grievant['s] property was stolen.

Dkt. No. 97-3 at 404-05 (errors in original). Plaintiff's grievance and appeal to the CORC makes no mention of religious headwear. *See generally id.* Plaintiff's grievance also fails to indicate that he believed the seizure of the three pages of material was in violation of his First Amendment rights. *See generally id.* Instead, plaintiff's grievance solely seeks the return of those materials that prison personnel determined did not constitute gang-related material. *See generally id.*

Consistent with the objectives of the PLRA, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697. In determining whether exhaustion has been achieved, the standard for determining the sufficiency of an administrative grievance is analogous to that of notice pleading. *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (citing *Johnson*, 380 F.3d at 697).

**\*10**  Although it is "appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell*, 446 F.3d at 310; *see also Singh v. Lynch*, 460 F. App'x. 45, 47 (2d Cir. 2012); *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005) ("[T]he mere fact that [the] plaintiff filed some grievance, and fully appealed all the decisions on that grievance, does not automatically mean

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 63 of 74

2019 WL 1387460

that he can now sue anyone who was in any way connected with the events giving rise to that grievance."). Even affording plaintiff the appropriate lenity as a *pro se* litigant, plaintiff's grievance failed to describe any First Amendment concern arising out of defendant Mahuta's cell search.

Although it is true that "a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance," *Simmons v. Robinson*, No. 07-CV-7383, 2011 WL 31066, at \*4 (S.D.N.Y. Jan. 4, 2011) (citing *Espinal v. Goord*, 55 8 F.3d 119, 128 (2d Cir. 2009) ), I am unable to conclude that the sole grievance filed by plaintiff provided the facility with sufficient information to permit an investigation of his concerns regarding the disposal of religious headwear or the seizure of three pages of gang-related material. [16] Instead, it is clear from plaintiff's grievance that his primary concern was with securing the return of his non-gang related material. Dkt. No. 97-3 at 403-05. Accordingly, because plaintiff's grievance failed to provide the facility enough information to investigate his free speech and free exercise concerns, plaintiff's February 20, 2015 grievance was not sufficient to exhaust his administrative remedies prior to commencement of this action. *See, e.g., Dailey v. Fuller*, 15-CV-1051, 2016 WL 7732236 \*7–\*8 (Dec. 5, 2016) (Dancks, M.J.), *report and recommendation adopted by* (N.D.N.Y. Jan 11, 2017) (Sannes, J.); *Wright v. Potter*, No. 14-CV-01041, 2016 WL 5219997, at \*5 (Jun. 28, 2016) (Dancks, M.J.), *report and recommendation adopted by* 2016 WL 5173283 (Hurd, J.) (N.D.N.Y. Sept. 21, 2016).

[16]   Copies of all unreported decisions have been appended for the convenience of the *pro se* plaintiff.

This, of course, does not end the court's inquiry with respect to exhaustion. Plaintiff, however, has not claimed that the IGP process was unavailable to him during the relevant times periods. To the contrary, the record evidence indicates that plaintiff was able to successfully navigate the grievance procedure while housed in a SHU at a different facility.

Accordingly, the undisputed facts in this case reveal that with respect to his First Amendment claims, plaintiff failed to fully comply with the IGP prior to the commencement of this action, despite his remedies remaining available to him at all relevant times. I therefore recommend that defendants' motion for summary judgment on this basis be granted on this procedural basis. [17]

[17]   In light of this recommendation, I have elected not to address defendants' alternative argument on the merits.

C. Due Process

Defendants contend that plaintiff was afforded adequate due process during the disciplinary proceedings conducted by defendants Coveny, Whiteford, and McKeighan. Dkt. No. 97-14 at 21-28. In his cross motion, plaintiff disagrees, and asserts that defendants' decisions deprived him of procedural due process in connection with each of his Tier III disciplinary hearings. *See generally* Dkt. No. 102.

1. Generally

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). Much like their prior motions, defendants do not seek dismissal of any of plaintiff's due process claims on the basis that he was not denied a constitutionally significant liberty interest, *see generally* Dkt. No. 97-14 at 21-28, and as a result the court will not address that issue. Instead, defendants' argument is focused on whether plaintiff was deprived of a liberty interest without being afforded sufficient process. *See generally id.*

\*11   The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established under *Wolff v. McDonnell*, 418 U.S. 539 (1974). In its decision in *Wolff*, the Court held that the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-69; *see also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). To pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must also garner the support of at least "some evidence." *Superintendent,*

Case 9:20-cv-00241-LEK-TWD Document 39 Filed 01/19/21 Page 64 of 74

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 1387460

*Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Luna*, 356 F.3d at 487-88.

The due process clause of the Fourteenth Amendment also guarantees that "[a]n inmate subject to a disciplinary hearing is entitled to ... an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing, *inter alia, Wolff*, 418 U.S. at 570-71). The Second Circuit has explained that its "conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990). "The degree of impartiality required of prison officials[, however,] does not rise to the level of that required of judges." *Allen*, 100 F.3d at 259. Indeed, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* (citing *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1996); *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ). "A hearing officer may satisfy the standard of impartiality if there is *'some evidence* in the record' to support the findings of the hearing." *Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5 (W.D.N.Y. Oct. 5, 2010) (emphasis in original) (quoting *Hill*, 472 U.S. at 455).

### a. Defendant Coveny

According to plaintiff, defendant Coveny violated his due process rights during the second hearing by improperly denying his request to call Officer Connors, Officer Zarrias, and inmate Mims as witnesses. Dkt. No. 72 at 9 (first cause of action); *see also* Dkt. No. 102 at 11. Although due process includes the "right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board," that right is not unfettered. *Ponte v. Real*, 471 U.S. 491, 495 (1985). An inmate's right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity. *See Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991).

In this case, after an exhaustive review of the record evidence, I conclude that no reasonable factfinder could conclude that defendant Coveny violated plaintiff's due process rights at the second hearing. First, with respect to plaintiff's alleged request to call Officer Zarrias, although it appears plaintiff did call him as a witness for the initial hearing, there is no record evidence that plaintiff sought his testimony in connection with the second hearing. Dkt. No. 97-4 at 17-18; *see* Dkt. No. 97-9

at 3. Plaintiff cannot now turn his own lack of diligence into a constitutional deprivation. *See, e.g., Hasan Jamal Abdul Majid v. Henderson*, 533 F. Supp. 1257, 1273 (N.D.N.Y.) (Munson, C.J.) (concluding that due process was not violated where the inmate failed to request witnesses at or before the hearing), *aff'd mem.*, 714 F.2d 115 (2d Cir. 1982).

**\*12** In addition, although plaintiff requested testimony from inmate Mims, who had also testified at the initial hearing, that witness refused to provide testimony at the second hearing and declined to elaborate on the reasons for his refusal beyond "[b]ecause I am not doing it." Dkt. No. 97-3 at 69. Courts in this circuit have routinely held that a hearing officer's failure to call a fellow inmate who refuses to testify does not offend procedural due process. *See, e.g., Caimite v. Venettozzi*, No. 17-CV-0919, 2018 WL 6069458, at *5 (Oct. 29, 2018) (Hummel, M.J.), *report and recommendation adopted by* 2018 WL 6068414 (N.D.N.Y. Nov. 20, 2018) (Sharpe, J.); *Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *6 (S.D.N.Y. Feb. 17, 2015); *Hinton v. Prack*, No. 12-CV-1844, 2014 WL 4627120, at *7 (N.D.N.Y. Sept. 11, 2014) (Kahn, J.) ("The fact that these witnesses refused to testify on [the plaintiff's] behalf does not alter the fact that he was given the opportunity to call witnesses.").

Finally, with respect to the testimony of Officer Connors, the record reveals that plaintiff's request to call him as a witness was initially granted and defendant Coveny contacted him to "make arrangement for [his] testimony." Dkt. No. 97-3 at 234, 241. In response to being contacted to provide "confidential testimony" for the proceeding, however, Officer Connors indicated that "he was not working on the date of [the] alleged incident." Dkt. No. 97-3 at 279. As a result, defendant Coveny properly denied plaintiff's request based upon a finding that the officer could not provide relevant evidence. Dkt. No. 97-3 at 85; *see* Dkt. No. 97-9 at 2-3; *see also Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999). ("[A] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony.").

Accordingly, because no reasonable factfinder could conclude that defendant Coveny violated plaintiff's procedural due process rights, I recommend that the claim against defendant Coveny be dismissed.

### b. Defendant Whiteford

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)
Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 65 of 74

2019 WL 1387460

Plaintiff alleges that defendant Whiteford violated his due process rights during the January 2013 disciplinary hearing when he denied his request to call Officer Kentzel as a witness. Dkt. No. 72 at 9-10 (third cause of action); *see also* Dkt. No. 102-1 at 1. According to plaintiff, Officer Kentzel would have testified that plaintiff did not write the "return to sender" letter and that there was another inmate that was "throwing [plaintiff's] name" on correspondence. Dkt. No. 97-3 at 295-99, 301-02; *see also* Dkt. No. 97-10 at 2.

During the disciplinary hearing, Sergeant O'Connell stated that he had compared the handwriting and signature on the "return to sender" letter with correspondence known to be written by plaintiff, and concluded that plaintiff was the author of the letter at issue. Dkt. No. 97-3 at 299-300. Sergeant O'Connell's testimony provided defendant Whiteford with a rational basis for concluding that Officer Kentzel's testimony would have been irrelevant or unnecessary. Dkt. No. 97-4 at 46 ("Irrelevancy, I believe."); *see also* Dkt. No. 97-10 at 2-3. Defendant Whiteford believed that Officer Kentzel did not have "any knowledge of the actual letter at issue in the hearing and whether or not it had been authored by plaintiff." Dkt. No. 97-10 at 3.

Based upon the record evidence, no reasonable juror could find that defendant Whiteford violated plaintiff's due process rights by denying his request to call Officer Kentzel. *See Delee v. Hannigan*, 729 F. App'x 25, 31 (2018) ("[D]efendants had the right to refuse to hear irrelevant testimony from witnesses with no personal knowledge.") (citing 7 N.Y.C.R.R. § 253.6(c); *Kingsley*, 937 F.2d at 30 (2d Cir. 1991) ); *see also Kalwasinski*, 201 F.3d at 109. I note moreover, courts have been cautioned not to "second guess" a hearing officer's decision to deny an inmate's witness requests where the hearing officer articulates a basis for his decision. *See Wolff*, 418 U.S. at 566 (explaining that courts "should not be too ready to exercise oversight and put aside the judgment of prison administrators").

**\*13** Because no reasonable factfinder could conclude that defendant Whiteford violated plaintiff's procedural due process rights by refusing to call Officer Kentzel, I recommend that the claim against him be dismissed.

### c. Defendant McKeighan

Plaintiff alleges that defendant McKeighan violated his due process rights in connection with the February 2015 disciplinary proceeding by (1) denying plaintiff's request to call his brother as a witness; (2) permitting the admission of fabricated evidence; and (3) denying plaintiff's request for video footage. Dkt. No. 72 at 10-11 (sixth cause of action); Dkt. No. 102-4 at 12.

First, when the search of plaintiff's cell uncovered three pages of gang-related material, plaintiff was charged with violating Rule 105.13 of the standards of inmate behavior, *see* Dkt. No. 97-3 at 182, which prohibits possessing gang-related material. Although plaintiff wished to call his brother to testify that he was the author of the three pages in question, defendant McKeighan determined that the testimony would be irrelevant in light of the fact that plaintiff was charged with possession—not authorship—of the material in question. Defendant McKeighan's decision to deny plaintiff's request to call his brother as a witness was well within the discretion of the hearing officer, and comports with procedural due process. *See Kalwasinksi*, 201 F.3d at 108-09.

Next, there is no merit to plaintiff's allegation that defendant McKeighan permitted the admission of evidence that was purportedly fabricated, and this allegation evinces plaintiff's misapprehension of the evidence that was provided pursuant to his own request. Plaintiff requested copies of what he referred to as "call outs" or "yard go-arounds" for Clinton which, he asserted, would demonstrate that he was not in the yard with his co-conspirators during the relevant times. Dkt. No. 97-5 at 5-6. After defendant McKeighan determined that no such documents existed, he instead obtained "program sheets" for the relevant period. Dkt. No. 97-5 at 126-154. Defendant McKeighan then compiled the information on the "program sheets" into a spreadsheet, so that he could readily ascertain whether plaintiff and his co-conspirators were together the evening of January 19, 2015. Dkt. No. 97-5 at 218; *see also* Dkt. No. 97-6 at 18-19. The undisputed evidence demonstrates that a meaningful effort was made to locate the information that plaintiff sought, although it was not in the precise form requested.

Finally, to the extent that defendant McKeighan denied plaintiff's request for certain video footage, the record is clear that the evidence did not exist inasmuch as it had been taped over in the normal course of business by the time the conspiracy had been uncovered. Accordingly, because no reasonable factfinder could conclude that defendant McKeighan violated plaintiff's procedural due process rights, I recommend that the claim against him be dismissed.

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 66 of 74

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)

2019 WL 1387460

## D. Supervisory Liability [18]

[18]  If the above-described recommendation regarding plaintiff's due process claims is adopted by Senior District Judge Sharpe, there is no remaining underlying cause of action upon which to hold defendants Annucci and Venettozzi liable in their capacities as supervisors. *See Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."); *see also, e.g., Caimite v. Venettozzi*, 17-CV-0919, 2018 WL 6069458, at *5 (Oct. 29, 2018) (Hummel, M.J.), *report and recommendation adopted by* 2018 WL 6068414 (Sharpe, J.). However, this ground has not necessarily been advanced by defendants in support of their motion for summary judgment. *See generally* Dkt. No. 97.

**\*14** Defendants argue that plaintiff's supervisory liability claim against defendant Annucci must be dismissed because there is no evidence that he was personally involved in the review or determination of plaintiff's appeals. Dkt. No. 97-14 at 29. Defendants further argue that plaintiff's supervisory liability claims against defendant Venettozzi must be dismissed because there is no proof that he was aware of any alleged underlying constitutional violation. Dkt. No. 97-14 at 30-31. Plaintiff asserts in his cross motion that defendant Annucci "did not remedy the wrong acts" and defendant Venettozzi "affirmed or modified" the procedural due process violations. *See generally* Dkt. No. 102.

### 1. Supervisory Liability - Generally

It is well-established that a defendant cannot be liable under section 1983 solely by virtue of being a supervisor, " 'and [liability] cannot rest on respondeat superior.' " *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ); *see also Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who

caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501. [19]

[19]  Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the issue has been discussed, the Second Circuit has declined to squarely address the impact of *Iqbal* upon the categories of supervisory liability addressed in *Colon. See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation and internal quotation marks omitted)); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in [*Colon*,] ... [b]ut the fate of *Colon* is not properly before us[.]").

### 2. Defendant Annucci

Plaintiff alleges that he wrote to defendant "Annucci, making him aware of the [c]onstitutional violations, conducted by his subordinates[,]" but that Annucci "failed to remedy the wrong." Dkt. No. 102-1 at 2; *see also* Dkt. No. 72 at 12-14. This allegation is based upon plaintiff having addressed one of his amended appeals, as well as one additional letter that he sent to defendant Annucci. Dkt. No. 97-3 at 344 (amended appeal dated March 9, 2015); Dkt No. 97-3 at 348-49 (letter dated April 1, 2015). There is no dispute that defendant Annucci did not respond to plaintiff's appeal or letter or undertake any investigation as a result of plaintiff's correspondence. Dkt. No. 97-13 at 2.

It is well settled that Annucci's failure to respond to plaintiff's amended appeal and letter, without more, is not sufficient to give rise to personal involvement under section 1983. *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-0539, 2016 WL 5394752, at *22 (Aug. 25, 2016) (Peebles, M.J.*), report and recommendation adopted by* 2016

Barnes v. Annucci, Not Reported in Fed. Supp. (2019)
2019 WL 1387460

Case 9:20-cv-00241-LEK-TWD   Document 39   Filed 01/19/21   Page 67 of 74

WL 5374125 (N.D.N.Y. Sept. 26, 2016) (Sannes, J.); *see also, e.g., Houston v. Schriro*, No. 11-CV-7374, 2014 WL 6694468, at *14 (S.D.N.Y. Nov. 26, 2014) ("[I]gnoring a prisoner's letter or complaint is insufficient to render an official personally liable."); *Parks v. Smith*, No. 08-CV-0586, 2011 WL 4055415, at *14 (N.D.N.Y. March 29, 2011) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that official's personal involvement.").

**\*15** For these reasons, I find that no reasonable factfinder could conclude, based on the record evidence, that defendant Annucci was personally involved in any of the allegations giving rise to this action.

### 3. Defendant Venettozzi

With respect to defendant Venettozzi, plaintiff alleges that after learning of the violation of his due process rights through his appeal, defendant Venettozzi failed to remedy the wrong. Dkt. No. 102-1 at 2; *see also* Dkt. No. 72 at 13. According to plaintiff, although he alerted defendant Venettozzi as to the constitutional violations by way of a series of appeals, defendant Venettozzi merely affirmed the disposition, while modifying the penalty. Dkt. No. 72 at 13; *see also* Dkt. No. 97-3 at 340-99.

Here, there is no genuine dispute of material fact that Venettozzi received and decided plaintiff's appeal in connection with the February 27, 2015 disciplinary determination that was issued by defendant McKeighan. *See generally* Dkt. No. 97-12. According to defendant Venettozzi,

> After reviewing the entire record of the hearing and considering all the grounds for overturning or modifying the determination asserted in plaintiff's appeal documents, I found that the hearing had been properly conducted, plaintiff had been provided constitutionally adequate due process of law and sufficient opportunity to put on a defense, and the findings of the hearing officer were supported by

the evidence. I affirmed the findings of guilt.

*Id.* at 3-4. As a result, defendant Venettozzi affirmed the finding of guilt, but reduced plaintiff's penalty from 910 days to twelve months of disciplinary SHU confinement. Dkt. No. 97-3 at 12, 341-42; Dkt. No. 97-12 at 4.

As defendants observe, upon plaintiff's appeal defendant Venettozzi did not identify any constitutional violations, including the failure to provide plaintiff with due process of law. Dkt. No. 97-14 at 30-31. Likewise, I have concluded that no reasonable factfinder could conclude that plaintiff's due process rights were violated. *See* Point III.C, *supra*. As a result, because no constitutional violation occurred, and there was no wrong to remedy, no supervisory liability can exist as against defendant Venettozzi. *See, e.g., Martin v. Oey*, No. 16-CV-00717, 2017 WL 6614680, at *10 (Nov. 28, 2017) (Dancks, M.J.), *report and recommendation adopted by* 2017 WL 6611575 (N.D.N.Y. Dec. 27, 2017) (McAvoy, J.); *Toole v. Connell*, No. 04-CV-0724, 2008 WL 4186334, at *1, 7 (N.D.N.Y. Sep. 10, 2008) (Kahn, J.) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *Lighthall v. Vadlamudi*, 04-CV-0721, 2006 WL 721568, at *13 (N.D.N.Y. Mar. 17, 2006) (Mordue, J.) ("Since no constitutional violation occurred and there was no wrong to remedy, no supervisory liability exists."); *Rambaldi v. City of Mount Vernon*, 2003 WL 23744272, at *10 (S.D.N.Y. Mar. 31, 2003) (concluding that because there was no wrongful conduct, there were "no 'wrongs' to remedy" by the supervisory defendants).

For these reasons, I find that no reasonable factfinder could conclude, based on the record evidence, that defendant Venettozzi was personally involved in any of the constitutional deprivations giving rise to this action.

### IV. SUMMARY, ORDER, AND RECOMMENDATION

**\*16** According to plaintiff, following a series of incidents that resulted in disciplinary proceedings being brought against him, defendants violated his First and Fourteenth Amendments rights. Discovery having closed, defendants seek dismissal of plaintiff's claims on a variety of grounds, while plaintiff has cross moved for the entry of summary judgment. Having carefully reviewed the record before the court, defendants are entitled to the entry of summary

judgment dismissing all claims. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 97) be GRANTED, plaintiff's cross motion for summary judgment (Dkt. No. 102) be DENIED, and plaintiff's second amended complaint (Dkt. No. 72) is DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [20] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993). It is further hereby

[20]     If you are proceeding pro se and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

ORDERED that the clerk of the court is respectfully directed to modify the court's records to change defendant Ollies to "Anthony Olles", defendant J. Whitford to "John Whiteford", and Donald Venetozzi to "Donald Venettozzi", as set forth in footnote number one; and it is further

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1387460

---

End of Document                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 31066
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Alphonso SIMMONS, Plaintiff,

v.

Frank ROBINSON, Grievance Supervisor, Sing Sing Correctional Facility; Anthony Chu, Food Service Administrator, Sing Sing Correctional Facility; Kenneth Decker, Acting Superintendent, Sing Sing Correctional Facility; John Nuttal, Deputy Commissioner of Program Services, New York State Department of Correctional Services; Brian Fischer, Commissioner of the New York State Department of Correctional Services, Defendants.

No. 07 Civ. 7383(DAB).
|
Jan. 4, 2011.

*ADOPTION OF REPORT AND RECOMMENDATION*

DEBORAH A. BATTS, District Judge.

**\*1** Plaintiff Alphonso Simmons, proceeding *pro se* and *in forma pauperis,* filed this Complaint on July 23, 2007 pursuant to 42 U.S .C. § 1983, alleging that while housed at Sing Sing Correctional Facility, Defendants, who are current and former employees of the New York State Department of Correctional Services ("DOCS"), violated his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution.[1] Defendants moved for Summary Judgment on October 31, 2008. On January 28, 2010, Magistrate Judge Douglas F. Eaton Issued a Report and Recommendation ("Report") in the above-captioned matter recommending that Defendants' Motion for Summary Judgment be granted in its entirety. Plaintiff filed timely objections to the Report.

[1]    Although Plaintiff did not specifically identify the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 804, 42 U.S.C.

§§ 2000cc *et seq.,* in his Complaint, the Defendants addressed it in their briefing given Plaintiff's *pro se* status and RLUIPA's applicability to Plaintiff's claims. (Defs .' Mem. at 20.)

Pursuant to 28 U.S.C. § 636(b)(1)(C), the District Court is required to make a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." This Court, therefore, reviews *de novo* Plaintiff's objections regarding exhaustion of his claims, cross-contamination at Sing Sing, and religious discrimination. Where a party raises only general objections, and for portions of the Report to which no objection is made, "a district court need only satisfy itself there is no clear error on the face of the record." *See Advance Coatina Tech. Inc. v. LEP Chem. Ltd.,* 142 F.R.D. 91, 94 (S.D.N.Y.1992). Because Plaintiff's remaining objections regarding the scope of discovery and bias in the proceedings are general or seek to relitigate prior arguments, this Court reviews the remainder of the Report for clear error.

After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); *see also* Local Rule 72.1(d). For the reasons contained herein, this Court ADOPTS the findings of Magistrate Judge Eaton and grants Defendants' Motion for Summary Judgment.

I. BACKGROUND

The facts in this matter are described in Judge Eaton's Report and will not be restated fully here. Magistrate Judge Eaton found that 1) Plaintiff failed to exhaust his claims relating to food preparation at Attica, Green Haven, and the Food Production Center in Rome, New York; 2) there is no genuine issue of material fact as to whether the food sanitation at Sing Sing unlawfully burdened Plaintiff's religious rights; 3) the Religious Alternative Menu ("RAM") program is nutritionally adequate[2] and does not burden Plaintiff's rights under the First Amendment or RLUIPA; and 4) providing only the RAM program to Plaintiff while allowing Jewish inmates to participate in the Cold Alternative Diet ("CAD") program does not violate Plaintiff's Fourteenth Amendment Equal Protection rights.

[2]    Although Magistrate Judge Eaton's Report and Recommendation does not explicitly address

2011 WL 31066

the Eighth Amendment, the finding that the RAM program is nutritionally adequate speaks to Plaintiff's Eighth Amendment claims. *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) ("[T]he Eighth Amendment ... require[s] that prisoner be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.") (internal quotation marks omitted).

Subsequently, on March 2, 2010, Plaintiff filed numerous objections to the Report, which raise the following concerns: 1) the scope of discovery was limited improperly; 2) the proceedings were biased toward the Defendants; 3) Plaintiff's claims regarding policies and practices at Attica, Green Haven, and the Food Production Center were exhausted properly; 4) there is a genuine issue of material fact as to whether the utensils or components of the RAM meal were subject to cross-contamination; 5) the food service at Sing Sing is discriminatory to Muslim inmates when compared to the services available to Jewish inmates; and 6) Plaintiff was not permitted to question Defendants' expert witness. On May 7, 2010, Defendants filed a Response to Plaintiff's Objections to the Report.

**\*2** Because Plaintiff is proceeding *pro se,* the Court must consider his submissions liberally, and interpret them to raise the strongest arguments they can suggest. *See Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (citing *Burgos v. Hopkins,* 41 F.3d 787, 790 (2d Cir.1994)). Nevertheless, when a party raises only general objections to the report, "a district court need only review the record for clear error." *Brown v. Peters,* No. 95 Civ. 1541, 1997 WL 599355, at \*7 (N.D.N.Y. Sept. 22, 1997) (citing cases).

Even construed liberally, Plaintiff's objection regarding Judge Eaton's bias toward the Defendant does not challenge any factual finding or set forth any legal ground on which Magistrate Judge Eaton erred. The Court need not, and does not, give this objection *de novo* review.

Furthermore, "a *pro se* party's objections to the Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party will be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 340 (S.D.N.Y.2009) (citing *Pickney v. Progressive Home Health Services,* No. 06 Civ. 5023, 2008 WL 2811816, at \*1 (S.D.N.Y. July 21, 2008)). Here, Plaintiff's

objection regarding the scope of discovery simply restates the same arguments set forth in Plaintiff's previously rejected motions and papers, and thus is reviewed for clear error. The remainder of Plaintiff's objections are reviewed *de novo.*

Accordingly, the Court reviews de novo the following objections: 1) Plaintiff's claims regarding policies and practices at Attica, Green Haven, and the Food Production Center ("FPC") were exhausted properly; 2) there is a genuine issue of material fact as to whether the utensils or components of the RAM meal were subject to cross contamination in violation of Plaintiff's rights under the First Amendment and RLUIPA; 3) the food service at Sing Sing discriminates against Muslim inmates; and 4) Plaintiff was not permitted to question the Defendants' expert witness.

## II. DISCUSSION

### A. Legal Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *James v. New York Racing Ass'n,* 223 F.3d 149, 152 (2d Cir.2000). While a court must always construe "the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor," *Mathirampuzha v. Potter,* 548 F.3d 70, 74 (2d Cir.2008), the non-moving party may not rely only on "conclusory allegations or unsubstantiated speculation" to preclude summary judgment. *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005). Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.' " *Zelnik v. Fashion Institute of Technology,* 464 F.3d 217, 224 (2d Cir.2006) (quoting Fed.R.Civ.P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived " 'to put up or shut up.' " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (citation omitted).

### B. Plaintiff's Specific Objections

#### 1. Exhaustion of Administrative Remedies

**\*3** The Prison Litigation Reform Act (the "PLRA") mandates that a prisoner must exhaust all administrative remedies before bringing an action in federal court regarding

prison conditions. 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Failure to exhaust is an affirmative defense that defendants bear the burden of pleading. *Jones v. Block,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In order to satisfy the PLRA exhaustion requirement, an inmate must exhaust administrative remedies properly, meaning that an inmate "must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). DOCS has a three-step Inmate Grievance Program ("IGP") that an inmate must complete to exhaust administrative remedies fully. *See Neal v. Goord,* 267 F.3d 116, 112 (2d Cir.2001).

In this case, Plaintiff filed and fully exhausted his 2006 Sing Sing grievance, which alleged: (1) that the manner in which pork was being served at Sing Sing subjected the Religious Alternative Menu ("RAM") option to cross contamination; and (2) that the dishes and utensils at Sing Sing were washed in the same machine as those used for the general population and thus were also subject to cross contamination. (Compl.Ex. B).

Plaintiff subsequently commenced this action, alleging that Defendants violated his constitutional rights by: (1) failing to investigate his Sing Sing grievance properly; (2) failing to maintain the integrity of the food service at Sing Sing; (3) causing Plaintiff to use dishes and utensils contaminated by pork products at Sing Sing; (4) discriminating against Muslim inmates by not providing them with hermetically sealed meals and utensils similar to those provided to Jewish inmates at Sing Sing; (5) "failing to ensure all mess halls in all correctional facilities in the State of New York ... provide Muslim inmates with foods that are 'wholly free of pork products,' " (Compl.¶ 41); and (6) failing to notify Plaintiff that products produced at DOCS Food Production Center ("FPC") are possibly made haram, or unlawful for him to eat, because they are prepared and packaged with the same equipment used to prepare and package pork items.

Claims (1) through (3) were raised in Plaintiff's grievance. Defendants concede that Plaintiff has exhausted the

discrimination claim (Claim (4)) because it "closely followed issues Plaintiff raised in his grievance." (Reply Mem. at 4). Defendants object to Plaintiff's attempts to raise the remaining claims (Claim (5) and Claim (6)) "to serve as additional constitutional violations or to bolster his claims concerning the constitutionality of Sing Sing's food service." (Reply Mem. at 4). Defendants contend that these claims should be barred because Plaintiff did not file any grievances regarding issues beyond Sing Sing and has thus failed to exhaust his available administrative remedies. Judge Eaton agreed with Defendants and limited Plaintiff's claims to those raised in his Sing Sing grievance. (Report at 4).

**\*4** Plaintiff, however asserts that his failure to exhaust his administrative remedies should not bar claims 5 and 6. (Obj.¶ 12). Plaintiff contends that he exhausted his claims regarding the alleged cross contamination at DOCS FPC, Attica and Green Haven Correctional Facilities, and his claims regarding the sufficiency of the cleaning procedures at Attica and Green Haven, because his Sing Sing grievance alerted Defendants to the problems of cross contamination and the inadequacy of cleaning procedures generally. (Obj.¶ 11).

The Second Circuit has held that "alerting the prison officials to the nature of the wrong for which redress is sought,' [without filing a formal grievance] does not constitute proper exhaustion." *Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (internal citations omitted). Nevertheless, a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance. *See Espinal v. Goord,* 55 8 F.3d 119, 128 (2d Cir.2009) (holding that a claim for denial of medical care was exhausted where a grievance alleged excessive force and retaliation because "it was clear that the state had considered these allegations when reviewing [the] grievance"). Thus, the question for the Court is whether Plaintiff's grievance "provided enough information to alert the prison to the nature of the wrong for which redress [was] sought, and to afford[ ] ... time and opportunity [for the State] to address [the] complaint internally," *Espinal v. Goord,* 558 F.3d at 127 (internal citations omitted).

Drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff's Sing Sing grievance cannot be construed to place Defendants on notice of claims regarding alleged cross contamination at DOCS FPC and at Attica and Green Haven, or claims regarding the cleaning procedures at Attica and Green Haven. Plaintiff's fully exhausted grievance alerted Defendants to two alleged problems: (1) that when pork was served in the Sing Sing mess hall, the manner in which it

2011 WL 31066

was served subjected the RAM option to cross contamination; and (2) that all of the dishes at Sing Sing were washed in same machine and thus also subject to cross contamination. (Compl.Ex. B). Defendants investigated Plaintiff's grievance and issued a decision that addressed the service of pork and the cleaning of dishes at Sing Sing. (Compl. Ex. B; Robinson Decl. Exs. A–C.) The record does not indicate, nor does Plaintiff suggest, that Defendants investigated food production and cleaning procedures at other facilities when addressing Plaintiff's Sing Sing grievance. Accordingly, the Court finds that Plaintiff's claims regarding possible cross contamination at DOCS FPC, Attica, and Green Haven, and his claims regarding the cleaning procedures at Attica and Green Haven are not exhausted for the purposes of this action. Accordingly, Plaintiff's objection to Magistrate Judge Eaton's finding on exhaustion is overruled.

### 2. Cross Contamination at Sing Sing.

**\*5** Plaintiff objects that there is a genuine issue of material fact as to whether the sanitation practices at Sing Sing subjected the RAM to cross contamination in violation of his rights under the First Amendment and RLUIPA. In support of this contention, he makes the following objections: that DOCS began erecting barriers when pork was served, substantiating his claim that pork was being splashed (Obj.¶ 4); that some dishes at Sing Sing are not washed at high temperatures (Obj.¶¶ 18, 26); that the temperature logs DOCS provided are incomplete (Obj.¶ 19) or have been altered (Obj.¶ 20); that pork is cooked directly in pots and served in hotel pans that are not machine washed (Obj.¶¶ 22, 26); that some components of the RAM overlap with the general meal and are therefore placed adjacent to "haram" items and subjected to cross contamination (Obj.¶ 24); and that there are often visibly dirty dishes at Sing Sing and Defendants were aware of the problem due to grievances they received (Obj.¶¶ 28–29).

Defendants produced evidence that the sanitation and RAM service procedures at Sing Sing were intended to preserve the rights of Muslim inmates to a diet consistent with their religious strictures. The Declaration of Sing Sing Food Administrator Anthony Chu states that pork is served only rarely and is separated from the RAM to the extent practicable. (Chu Decl. ¶¶ 5–6.) Additionally, a serving tray serves as a barrier between the pork and other food items. (Chu Decl., ¶ 6.) Serving equipment, utensils, and cooking pots are cleaned and sanitized by New York State Board of Health-approved methods, either through hand washing or use of a dish machine. (*Id.,* ¶ 8.) The Westchester Department

of Health inspects the facility annually and the facility keeps temperature logs showing dishwasher temperatures. (*Id.,* ¶ 9.)

To state a claim under the First Amendment or RLUIPA, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord,* 467 F.3d 263, 274–75 (2d Cir.2006). A recent case found that the sanitation procedures at Green Haven Correctional Facility did not substantially burden the religious beliefs of Muslim inmates. *Majid v. Fischer,* 07 Civ. 4584, 2009 U.S. Dist. LEXIS 71616 (S .D.N.Y. July 31, 2009). In reaching that conclusion, the court relied on the opinion of Defendants' expert, Imam Feisal Abdul Rauf (the "Imam"), who also toured Sing Sing's dining facility to evaluate the claims made in this case. On the subject of proper sanitation, the Imam concluded that the sanitation policies and procedures in place at Sing Sing complied with Islamic dietary law. (Bauman Decl., Ex. C, p. 6.) Nevertheless, the Imam noted the need for greater oversight to ensure that sanitation policies were followed. (*Id.*) In response, DOCS issued a memorandum on RAM service policies and implemented new food service training requirements. (Culkin Decl, ¶ 14; Ex. A.)

**\*6** This Court agrees with the court in *Majid* that the sanitation policies and procedures in place do not impose a substantial burden on Plaintiff's sincerely held religious beliefs. *See Majid,* 2009 U.S. Dist. LEXIS 71616 at \*25 (granting summary judgment on Plaintiff's RLUIPA and First Amendment claims and finding "abundant evidence indicating that service of RAM and the cleaning procedures in place at Green Haven conform to Islamic dietary law"). Accordingly, Plaintiff's Objection regarding cross contamination at Sing Sing is overruled.

### 3. Plaintiff's Equal Protection Claims

Plaintiff objects to the Report on the grounds that Muslim inmates are provided with cheaper, soy-based products that are kosher and therefore meet the dietary requirements of Jewish inmates, but Jewish inmates get more expensive products in their CAD meals (Obj. ¶ 14; Pl.'s Opp. Mem. p. 4; Pl.'s Decl. ¶ 57), and that a Rabbi oversees the CAD program while no Muslim chaplain inspects food production (Obj. ¶ 41e; Pl.'s Decl. ¶ 58).

To make a claim under the Equal Protection Clause, a claimant "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124,

129 (2d Cir.2005). Further, "[h]e ... must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.' " *Id.* (quoting *Shaw v. Murphy,* 532 U.S. 223, 225, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)).

Where prison regulations draw distinctions among inmate groups, whether the regulation is reasonably related to a legitimate penological interest depends on application of the four factors described in *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Those factors are: 1) whether there is a rational relationship between the regulation and the legitimate government interest asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that the accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990).

Here, Plaintiff's claims fail as a matter of law because he has put forth no evidence tending to show that the disparity in treatment between Muslim and Jewish inmates was the result of intentional or purposeful discrimination. As the court pointed out in *Abdul–Malik v. Goord,* 96 Civ. 1021, 1997 U.S. Dist. LEXIS 2047, at *24–25, 1997 WL 83402 (S.D.N.Y. Feb. 27, 1997), using meat versus vegetables as a proxy for discrimination is inappropriate. The CAD program is not necessarily more desirable, since it is cold and has less menu variety than the RAM program, which provides hot meals. *Id.* Both programs provide nutritionally adequate meals that conform to the respective religious demands. *Id.*

**\*7** Furthermore, courts have found repeatedly that the RAM program withstands scrutiny under the Equal Protection Clause when the *Turner* factors are applied. *See, Majid v. Fischer,* 07 Civ. 4585, 2009 U.S. Dist. LEXIS 71616, at *14– 30 (S.D.N.Y. July 31, 2009); *Abdul–Malik,* 1997 U.S. Dist. LEXIS 2047, at *24–29, 1997 WL 83402. As described in *Majid,* DOCS has a legitimate interest in meeting the dietary needs of multiple inmate groups in a cost-effective manner, and the mostly-meatless RAM option allows them to do so. *Majid,* 2009 U.S. Dist. LEXIS 71616 at *27–28. Furthermore, providing a separate halal meal for Muslims would impose costs on the prison system. *Id.* at 29.

Replacing the meat in the CAD meal with soy-based vegetarian products similar to those served in the RAM

program may be more cost-effective, but where the meals provided are nutritionally adequate and meet the religious requirements of the inmates, courts will not "micromanage DOCS's menu planning." *Abdul–Malik,* 1997 U.S. Dist. LEXIS 2047, at *29. Accordingly, Plaintiff's Objection with respect to the Equal Protection claim is overruled.

4. Deposition of Defendants' Expert Witness
Finally, Plaintiff objects that he was not permitted to depose Defendants' expert witness, Imam Feisal Abdul Rauf, (the "Imam"), because of his inability to pay the Imam's witness fees. (Obj.¶ 31).

The Second Circuit has held that federal courts are not authorized to waive or pay witness fees on behalf of an *in forma pauperis* litigant. *Malik v. LaValley,* 994 F.2d 90, 90 (2d Cir.1993); see also *Murray v. Palmer,* 2006 WL 2516485, at *1 (N.D.N.Y.) (holding that the plaintiff's *in forma pauperis* status did not excuse him from paying the costs of a deposition). Plaintiff was allowed to submit interrogatories, but the record does not show that Plaintiff submitted any interrogatory to the Imam. Furthermore, Plaintiff made his request to depose the Imam on October 21, 2008, which was after the close of discovery. (Obj. Ex. C; Defs.' Mem. p. 8.) Plaintiff cannot now raise the issue when he had ample to time to present his request to the Court. Plaintiff's objection is overruled.

III. CONCLUSION

As explained above, Plaintiff's remaining objections are either general, or restate arguments already submitted to and rejected by Magistrate Judge Eaton. Therefore this Court need only review the remainder of the Report for clear error. Having reviewed the Report and finding no clear error, and having conducted an independent *de novo* review of the specifically objected-to portions of the Report, it is ORDERED and ADJUDGED as follows:

1. The Report and Recommendation of United States Magistrate Judge Eaton dated January 28, 2010 is APPROVED, ADOPTED AND RATIFIED by the Court.

2. Defendants' Motion for Summary Judgment GRANTED with regard to all of Plaintiff's claims.

**Simmons v. Robinson, Not Reported in F.Supp.2d (2011)**

2011 WL 31066

3. The Clerk of Court is directed to CLOSE the docket in this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 31066

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---